## Richmond

## DOUGLAS T. LOCKE

v.

## JOHNS-MANVILLE CORPORATION, ET AL.

March 6, 1981.

Record No. 790171.

Present: Carrico, C.J., Harrison, Cochran, Poff, Compton, Thompson, JJ., and Harman, S.J.

George Edward Allen, III (*Allen, Allen, Allen & Allen,* on briefs), for appellant.

*C. Michael Montgomery (Henry C. Morgan, Jr.; Peter C. Manson, Jr.; Robert M. Hughes, III; Steven G. Schwartz; William B. Ely; A. James Kauffman; William L. Dudley; Gerard E. W. Voyer; James C. Roberts; Pender, Coward, Addison & Morgan; Eley, Rutherford & Leafe; Taylor, Hazen, Bryant & Kauffman; Doumar, Pincus, Knight & Harlan; Taylor, Walker & Adams; Mays, Valentine, Davenport & Moore,* on briefs), for appellees.

COMPTON, J., delivered the opinion of the Court.

In this products liability case, we consider only a statute of limitations question. We must determine when plaintiff's cause of action accrued in this personal injury suit alleging that the disease of mesothelioma resulted from inhalation of asbestos particles. According to the record, this disease is a cancerous tumor most often found in the pleura, or lining, of the victim's lung.

Appellant Douglas T. Locke, the plaintiff below, filed this action on July 24, 1978, against appellees Johns-Manville Corporation, Johns-Manville Sales Corporation, Keene Building Products Corporation, The Celotex Corporation, Unarco Industries, Inc., Eagle-Picher Industries, Inc., Armstrong-Cork Company and Norport Supply Company, Inc. In an amended motion for judgment, plaintiff alleged defendants were engaged in the business of mining, manufacturing, processing, importing, converting, selling and supplying asbestos and asbestos insulation materials and products. Plaintiff further alleged that during the period from 1948 to 1972 he inhaled asbestos fibers and dust as the result of his exposure to various asbestos products which were manufactured, sold and supplied by "some or all" of defendants. He also alleged that due to defendants' negligence and breach of warranty, and because of the inhalation of asbestos particles, he contracted mesothelioma, a disabling and fatal disease. Plaintiff sought recovery of compensatory damages in the amount of $1 million and punitive damages of $500,000.

Defendants' responsive pleadings included pleas of the two-year statute of limitations. Following pre-trial discovery proceedings, defendants filed motions for summary judgment also asserting the action was time-barred. Upon consideration of the allegations in plaintiff's amended motion for judgment, plaintiff's testimony contained in *de bene esse* depositions, a response to request for admissions, a written proffer of medical evidence filed by plaintiff, and argument of counsel, the trial court sustained the several motions and entered judgment for the defendants in the November 1978 order appealed from.

The record shows that since approximately 1948 plaintiff had been employed as an industrial electrician by various contractors at sites in Virginia, New York and North Carolina. For example, he worked: during 1948 and 1949 on the construction of the cruiser U.S.S. Newport News, at the Newport News Shipbuilding and Drydock Company; during 1954 and 1955 on a "power plant job" at Wilmington, North Carolina; in 1957 at a power plant location near the George Washington Bridge in New York City; during 1971-1972 on the Virginia Electric and Power Company "nuclear power house" in Surry County; and during 1972 at that company's Bremo Bluff power plant. Plaintiff asserts that at intervals during the period from 1948 to 1972 he breathed asbestos fibers and dust from defendants' various asbestos insulation products, with the last exposure being in September of 1972.

The plaintiff further alleged that before November of 1977 he was "in excellent health and physical condition," having had no symptoms of lung disease or abnormality. At that time plaintiff was 49 years of age and weighed 220 pounds. On November 1, plaintiff began experiencing impairment of lung function and thereafter sought medical attention. But prior to early 1978 he had no clinical or other medical evidence of mesothelioma, or any other lung-related abnormality or disease. Chest X-rays performed on April 14, 1978, were normal and "negative for disease," according to plaintiff's contention. Pain and other symptoms in the chest persisted, however.

On May 22, 1978, another X-ray was taken of plaintiff's chest and, for the first time, "an abnormality" was noted. A subsequent X-ray taken four days later "was markedly more abnormal" than the previous one. On May 26, 1978, plaintiff was hospitalized with a tentative diagnosis of pneumonia. Chest surgery was performed seven days later on June 2 and lung tissue was removed. This led to a diagnosis of mesothelioma located in the pleura of plaintiff's lungs. By the time this suit was filed in July of 1978, plaintiff's weight was below 180 pounds and his medical condition was rapidly deteriorating.[1]

Plaintiff's proffer of medical evidence states that if permitted to go to trial on the merits his proof will show the following facts. Asbestos is a carcinogenic chemical, known by experts since at least the 1930s to be a "cancer producer." Asbestos is the "only known cause" of mesothelioma, but not all persons exposed to asbestos fibers will con-

---

[1] Plaintiff died on December 27, 1978. The cause of death was malignant mesothelioma. The death occurred after the trial court lost jurisdiction of the action and after the notice of appeal had been filed. Upon suggestion by the personal representative of the death, we ordered the appeal to proceed in the decedent's name as if the death had not occurred. Code § 8.01-20.

tract the disease. There is no method, "medically or otherwise," to determine in advance which persons exposed to asbestos fibers will develop the disease.

The proffer further discloses that in those persons who contract mesothelioma, the tumor "begins at some time later" than the exposure to the fibers and "there is no clinical or medical evidence of any injury until some time elapses" after such exposures. Additionally, the dates of the victim's exposures to asbestos fibers, and particularly the date of last exposure, bear no medical relationship to when and if a mesothelioma will occur in that person. Also, the disease is always fatal, death normally occurring within three to 18 months of the time the victim first suffers symptoms.

The proffer also states that plaintiff's case of mesothelioma was caused by occupational exposures to asbestos fibers; that the date of plaintiff's last exposure to asbestos in 1972 "bears no relationship medically as to when his mesothelioma occurred"; and, finally, that no "clinical, medical, X-ray or other evidence of the occurrence of mesothelioma" in plaintiff existed before 1978.

To support the charge of negligence, plaintiff asserts, *inter alia,* that defendants failed to warn him of known dangers connected with use of the asbestos products, failed to inform him of what would be safe protective clothing and equipment to be used while being exposed to asbestos products, failed to inform him about safe and proper methods of handling and using defendants' products, and failed to test the asbestos products to ascertain the danger involved. Contending also that defendants were guilty of breaches of express and implied warranties that caused his personal injuries, plaintiff alleged, *inter alia,* defendants failed to properly label the products and sold defective products that were "unreasonably unsafe."

The parties do not dispute that the statute of limitations here is governed by Code §§ 8.01-243(A) and -230. Section 8.01-243(A) provides, in pertinent part, that "every action for personal injuries, whatever the theory of recovery . . . shall be brought within two years next after the cause of action shall have accrued." The relevant part of § 8.01-230 provides that "[i]n every action for which a limitation period is prescribed, the cause of action shall be deemed to accrue and the prescribed limitation period shall begin to run *from the date the injury is sustained in the case of injury to the person. . . ."* (accent added).

The ·trial court held, relying principally on *Street* v. *Consumers Mining Corp.,* 185 Va. 561, 39 S.E.2d 271 (1946), that the cause of action accrued no later than September of 1972 when plaintiff was last

exposed to asbestos dust caused by defendants' products. The court accordingly decided that the suit filed in 1978 was untimely.

Plaintiff's main argument on appeal is that his injury was sustained subsequent to defendants' tortious conduct. Thus, he contends, the statute of limitations began to run at the time of injury and not when the wrongful act was done. Plaintiff says that the right to maintain a tort action for personal injuries does not "accrue," within the meaning of the pertinent statutes, until the claimant has a "legally provable injury." He argues that when the word "injury" as used in § 8.01-230 is applied to the disease in question, the plaintiff has sustained an injury only when "the cancer manifests itself with sufficient certainty to be subject to proof in court." To rule otherwise, plaintiff asserts, would mean that a mesothelioma victim would be required to bring his suit at a time when it would have been impossible for him to have maintained it. Plaintiff argues that the purpose of a general statute of limitations, as here, is to regulate the remedy, not to destroy the right of action before it accrues or can be sued upon.

Defendants maintain that the trial court properly ruled that plaintiff's cause of action accrued no later than the date of his last alleged injurious exposure to an asbestos-containing product "and not upon his, or his physician's, discovery of resulting damage." Defendants say that the "purported legal basis" for plaintiff's lawsuit is that defendants failed to test properly their products and failed to warn adequately the plaintiff, prior to exposure, of any detrimental effects from their use. Defendants point out that plaintiff's proffer of medical evidence states that his disease was caused only by pre-1973 occupational exposure to and inhalation of airborne asbestos fibers. Yet, according to defendants, plaintiff also asserts that a discovery rule of accrual should apply because his exposure bears no relationship to when the cancer was capable of diagnosis. But plaintiff's cause of action, defendants urge, "rests on alleged harmful occupational exposure," that is, "the injurious event or series of injurious events complained of." And, defendants argue, their breach of any duties to test or warn "necessarily preceded, or at best were coextensive, with these injurious events." Relying upon *Street* v. *Consumers Mining Corp., supra; Richmond Redevelopment and Housing Authority* v. *Laburnum Construction Corp.,* 195 Va. 827, 80 S.E.2d 574 (1954); *Hawks* v. *DeHart,* 206 Va. 810, 146 S.E.2d 187 (1966); and *Virginia Military Institute* v. *King,* 217 Va. 751, 232 S.E.2d 895 (1977), defendants exclaim that a decision reversing the lower court in this case "would run counter to all relevant legal and statutory precedent, and would represent a clear departure from Virginia's longstanding limitations prin-

ciples." We reject defendants' contentions. We think this action was timely.

The broad issue to be decided here is whether the plaintiff's right to bring his action accrued no later than 1972, when he was last exposed to the asbestos fibers from defendants' products, or whether his right accrued at some subsequent time, and if it did arise later, at what time did the right, in fact, accrue.

In order to reach the core of the problem raised by this all-inclusive question, a review first must be made of the ingredients of a cause of action. Then, the specific language of the instant statute of limitations must be studied, in light of the nature and purpose of statutes of limitations in general. That exercise will result in a focus upon the crucial question in the case, which will then be answered, first, by an examination of these unique facts, especially the medical evidence, and, second, by application of the pertinent law to those facts.

There is no right of action until there is a cause of action. *Caudill* v. *Wise Rambler,* 210 Va. 11, 13, 168 S.E.2d 257, 259 (1969). The essential elements of a cause of action, whether based on a tortious act or breach of contract, are (1) a legal obligation of a defendant to the plaintiff, (2) a violation or breach of that duty or right, and (3) harm or damage to the plaintiff as a proximate consequence of the violation or breach. *Id. See Sides* v. *Richard Machine Works, Inc.,* 406 F.2d 445, 446 (4th Cir. 1969). A cause of action does not evolve unless all of these factors are present. Specifically, without injury or damage to the plaintiff, no right of action accrues; stated differently, a plaintiff's right of action for damages for bodily injuries does not accrue until he is hurt. *Id.; Barnes* v. *Sears, Roebuck & Co.,* 406 F.2d 859, 861 (4th Cir. 1969).

The provisions of the statute of limitations under discussion, enacted in 1977 as a part of the wholesale revision of former Title 8 of the Code of Virginia, are not only consistent with the foregoing case law but are also compatible with the nature and purpose of such a general statute of limitations. They are intended to require prompt assertion of an accrued right of action, not to bar such a right before it has accrued. *Caudill,* 210 Va. at 13, 168 S.E.2d at 259.

Code § 8.01-230 specifies that a cause of action for personal injuries shall be deemed to accrue and the prescribed limitation period shall commence to run *from the date the injury is sustained.* We construe the statutory word "injury" to mean positive, physical or mental hurt to the claimant, not legal wrong to him in the broad sense that his legally protected interests have been invaded. Thus, the running of the time is tied to the fact of harm to the plaintiff, without which no

cause of action would come into existence; it is not keyed to the date of the wrongful act, another ingredient of a personal injury cause of action.

The crucial question in this case thus becomes: When was the plaintiff hurt? Was he hurt when he breathed defendants' particles of asbestos no later than 1972 or was he hurt at some subsequent date, and, if then, was the date within two years of July 24, 1978, when suit was filed? The answer to these questions must, in the main, be found in the medical evidence.

Although having breathed asbestos fibers from 1948 to 1972, plaintiff was in excellent health and physical condition until November of 1977. Prior to 1978 there was absolutely no medical evidence he had any lung-related abnormality or disease.

The medical expert opinion (uncontradicted at this stage of the proceedings), reasonably construed, shows that the cancerous tumor in question does not begin to form contemporaneously with exposure to asbestos dust; the malignancy is born afterwards. During the period between exposure and formation of the tumor "there is no clinical or medical evidence of *any injury* until some time elapses" (emphasis added), just how much time not being revealed by the proffer. Moreover, many persons exposed to asbestos particles never develop mesothelioma. And, the dates of exposure bear no medical relationship to when and if the malignant tumor will occur in the person exposed to asbestos dust.

Thus, according to the medical evidence before us, and keeping in mind that the burden to prove facts necessary to establish an application of the statute of limitations is upon a defendant, *Louisville and Nashville Railroad* v. *Saltzer*, 151 Va. 165, 168, 144 S.E. 456, 457 (1928), we are confronted in this case with a medical condition that does not arise at a specific *point of time,* as does a broken bone; mesothelioma results over a *period of time,* the beginning of the period being unknown. In other words, the cancer—the hurt—the harm—the injury—did not spring up at infliction of the wrongful act, that is, when the dust was inhaled no later than 1972. Rather, the tumor—the hurt—the harm—the injury—manifestly occurred before June of 1978 when the mesothelioma was diagnosed; the time it began to form before that date not being shown by the evidence. Simply put, legally and medically there was no injury upon inhalation of defendants' asbestos fibers.

Consequently, based on the record in this case, we hold the plaintiff's injury was not sustained and the cause of action did not accrue in 1972 or before, within the meaning of Code §§ 8.01-230 and

-243 (A). We further hold the cause of action accrued and the statute of limitations began to run from the time plaintiff was hurt. The "time plaintiff was hurt" is to be established from available competent evidence, produced by a plaintiff or a defendant, that pinpoints the precise date of injury with a reasonable degree of medical certainty.

Under the scant evidence in this case, the foregoing point in time would coincide with either the November 1977 date when plaintiff first experienced impairment of lung function or the date of the May 1978 X-ray when a lung abnormality was noted. Thus, we do not hold that the foregoing rule means the limitation period does not begin to run until the initial diagnosis is communicated to the victim or even until the first diagnosis is actually made. We merely conclude that the accrual point is when damage occurs. Under this rule, it is conceivable that when the disease manifests itself by symptoms, such as pain, discomfort or impairment of function, expert medical testimony will demonstrate the injury occurred weeks, months or even years before onset of the symptoms. Thus, the cause of action would accrue and the limitations period would run from the earlier and not the later time.

Contrary to defendants' argument, the rule we have just articulated is not a so-called "discovery" rule, and plaintiff does not advocate that we embrace such a theory. We adhere to our belief, expressed in *Virginia Military Institute* v. *King,* 217 Va. at 760, 232 S.E.2d at 900, that adoption of a discovery rule, which triggers the running of the statute only when the injury is discovered or should have been discovered in the exercise of reasonable diligence, must be accomplished by the General Assembly. But, as we shall shortly demonstrate, in all of our prior decisions that reject the discovery rule, the injury or damage existed at the time of the wrongful act; it had merely not been discovered in a timely manner. Here, however, there was no injury at the time of the wrongful act. A disease like this cancer must first exist before it is capable of causing injury. To hold otherwise would result in the inequity of barring the mesothelioma plaintiff's cause of action before he sustains injury.

The rule we adopt today is but an application of our prior decisions, such as *Caudill* and *Saltzer,* to the facts of the present case. In the latter case, Saltzer sued the railroad company to recover for damage to his land resulting from defendant's action in changing the channel of a river flowing through the property. Defendant's plea of the applicable five-year statute of limitations raised the question: When did the right of action accrue? Defendant contended it arose at the time the channel was changed in 1891 which was followed by erosion of

soil. Plaintiff argued that no appreciable damage occurred until there was "high water" in 1918, and the right of action accrued then. In affirming the trial court's decision overruling the plea, based on a jury's finding that the damage occurred in 1918, this court said, apropos the present case:

> "[W]here the damage . . . arises from a cause not then immediately effective, . . . the cause of action does not arise until the injury can be shown. The reason and justice of this is perfectly apparent, for a plaintiff who merely feared ultimate damage . . . under such circumstances would invite defeat if he only relied upon his fears and was unable to prove any actual damage. So the courts have formulated the general rule thus: Whenever any injury, however slight it may be, is complete at the time the [act or omission] is completed, the cause of action then accrues; but, whenever the [act or omission] is not legally injurious, there is no cause of action until such injurious consequences occur, and it accrues at the time of such consequential injury. . . ."

151 Va. at 170-71, 144 S.E. at 457, quoting *Southern Ry. Co.* v. *Leake,* 140 Va. 438, 441, 125 S.E. 314, 315 (1924).

Likewise, in *Caudill,* this court held that plaintiff's cause of action for personal injury arose at the time of the 1967 injury and not in 1964 when she purchased the defective automobile causing the injury. There, we decided that when plaintiff purchased the vehicle, the breach of an implied warranty of fitness occurred and plaintiff's cause of action for property damage arose. At the same time, the court said, plaintiff had a potential cause of action for personal injuries which did not accrue until she was injured. Thus, her personal injury action filed within two years of the date of injury was timely. There we also said:

> Obviously, since the plaintiff had not been injured at the time she purchased the car, she could not then maintain an action for her injuries. To say, then, that her right of action accrued before her injuries were received is to say that she was without remedy to recover damages for her alleged injuries. Such an unjust and inequitable result is not the purpose of statutes of limitation.

210 Va. at 12-13, 168 S.E.2d at 259.

In *Caudill,* we relied on the decisions of the United States Court of Appeals for the Fourth Circuit in *Sides* v. *Richard Machine Works,*

*Inc., supra,* and *Barnes* v. *Sears, Roebuck & Co., supra.* In *Sides,* the Court of Appeals held that plaintiff's right of action for personal injuries accrued when he was injured and not at the time of the earlier purchase of the defective locomotive that caused his injuries. The court analyzed Virginia law and the language of the former personal injury statute of limitations, which provided, without defining the accrual point, that actions for personal injury "shall be brought within two years next after the right to bring the same shall have accrued," Code § 8-24 (Cum. Supp. 1976). Holding there was no actionable tort until the plaintiff was hurt, the court said:

> Before [plaintiff was hurt], of course, a duty, an act or failure to act in violation of the duty, and negligence were outstanding, but no tort was then in being; it was no more than a potentiality or threat. If harm had not ensued, there would have been no tort and nothing to sue on.

406 F.2d at 446. In *Barnes,* the same court on similar facts reached a like result, applying identical reasoning.

The following cases relied upon by defendants, applying the limitations bar, are all factually inapposite. In *Street* v. *Consumers Mining Corp., supra,* the victim's disease, caused by breathing silica dust, had existed "from 10 to 15 years" although there was "no definite evidence to show at what time [the] silicosis was contracted." 185 Va. at 565, 39 S.E.2d at 272. There, the injury was complete and the cause of action accrued many years before the plaintiff's wrongful death action was instituted.

In *Richmond Redevelopment and Housing Authority* v. *Laburnum Construction Corp., supra,* a 1948 explosion stemming from an improper gas-pipe union caused the property damage sued for. The defective gas line was installed by defendant's subcontractor not later than 1943. In holding the suit filed in 1949 time-barred under a five-year statute of limitations, the court held the cause of action accrued at the time the line was constructed and not when the explosion occurred. The basis of the claim was for defective materials and improper workmanship and, according to the court, the hurt—the injury alleged—was the harm done to the pipe line upon installation. Thus, the injury was complete and the cause of action accrued no later than 1943, although the injury was not discovered until the subsequent explosion, which caused consequential damage.

Also in *Hawks* v. *DeHart, supra,* the cause of action for medical malpractice accrued in 1946 when a surgical needle was negligently

left in plaintiff's neck by the defendant physician. Thus the 1963 personal injury suit was untimely even though plaintiff did not discover the wrong until 1962. There, plaintiff was hurt and harmed when the needle was allowed to remain in her body. The injury was complete in 1946 when the wrong was committed.

Finally, in *Virginia Military Institute* v. *King, supra,* V.M.I. sued a firm of architects for alleged improper design of a building. We held the cause of action accrued when the plans were finally approved no later than February of 1968 and not when evidence of deterioration of the building's stonework was first noticed in December of 1969. Thus, the January 1974 suit was barred by the applicable five-year statute of limitations. There we pointed out that at the time the plans were approved in 1968, "if defects had been discovered, V.M.I. could have initiated legal proceedings against the architects" because "a cause of action for defective plans arose upon tender of the plans by the architect to the owner." 217 Va. at 759, 232 S.E.2d at 900. Consequently, the injury was complete in 1968 because the owner had suffered harm when the erroneous drawings were submitted.[2]

For the reasons assigned, we conclude the trial court erred in determining this action was time-barred. Accordingly, the judgment appealed from will be reversed. The case will be remanded for further proceedings not inconsistent with the views expressed in this opinion, without prejudice to the interests of the plaintiff, his estate, his personal representative or the decedent's statutory beneficiaries under the Virginia Death by Wrongful Act statutes.

*Reversed and remanded.*

---

[2] *Saltzer, Laburnum* and *King,* all property damage cases, were decided before the October 1, 1977 effective date of Code § 8.01-230, which also specified the accrual point for property damage causes of action. The statute provides that the cause of action shall be deemed to accrue and the prescribed limitation period shall begin to run "when the breach of contract or duty occurs in the case of damage to property and not when the resulting damage is discovered." Consider the effect, if any, of the statute upon the decisions in those three cases.