**Donna A. GRANAHAN, Appellant,**

v.

**Dr. Jean PEARSON, Appellee.**

No. 84–1566.

United States Court of Appeals, Fourth Circuit.

Argued April 2, 1985.

Decided Nov. 8, 1985.

Clifford J. Shoemaker, Washington, D.C., for appellant.

John A. Blazer (R. Harrison Pledger, Jr., McLean, Va., on brief), for appellee.

Before WINTER, Chief Judge, and SPROUSE and SNEEDEN, Circuit Judges.

SNEEDEN, Circuit Judge.

This is a malpractice action. We are asked to determine whether a two-year statute of limitations bars the claim of a patient who alleges that her doctor's failure to remove an intrauterine device caused her to become infertile. The district court dismissed the suit as untimely because the patient failed to file suit within two years after her relationship with her

doctor ended. We agree and affirm the dismissal.

## I.

Dr. Jean Pearson treated Donna Granahan for recurring vaginal infections and salpingitis[1] from September of 1973 through October of 1979.[2] When she first visited Pearson, Granahan wore an intrauterine device (IUD). Dr. Pearson removed Granahan's first IUD in August of 1974 and replaced it with another intrauterine device in October of that year. In August of 1982, Granahan visited another doctor who informed her that she was permanently infertile because of tubal blockage. This second doctor removed Granahan's IUD.

Granahan filed suit against Dr. Pearson in February of 1984 seeking $1 million in damages. She claimed that Pearson negligently failed to remove her IUD when she showed "obvious signs"[3] of Pelvic Inflammatory Disease (PID). Granahan contends the presence of the IUD caused the development of chronic PID which resulted in tubal blockage and infertility.

Dr. Pearson challenged Granahan's suit, claiming the statute of limitations barred the action. The district court agreed and dismissed the claim. The court held the two-year statute of limitations in this case began to run upon Granahan's last visit to Pearson in 1979. Granahan now appeals that ruling.

## II.

Jurisdiction in this case is based on diversity of citizenship. This court must therefore examine Virginia law to determine the applicable statute of limitations and isolate the moment at which a claim accrues under the statute. *See Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949).

---

1. Salpingitis is an inflammation of the fallopian or eustachian tubes. *Webster's Third New International Dictionary* (1981).

2. For purposes of this discussion of the applicability of the statute of limitations, we will as-

sume that all of the allegations in Granahan's complaint are true.

3. Joint Appendix at 16, Plaintiff's Complaint at paragraph 8.

In Virginia, a plaintiff must file suit for personal injuries within two years after the claim accrues. Virginia Code § 8.01–143 (1950, 1984 Rep.Vol.). The claim accrues and the statute of limitations begins to run when a plaintiff is injured. *Id.* at § 8.01–230. The issue in the present case is thus the timing of Granahan's injury.

Granahan claims that she was injured when she became infertile. She asserts that her tubal blockage occurred within two years of the filing of her suit. In support of her contention that this action is timely, Granahan cites *Locke v. Johns-Manville Corp.*, 221 Va. 951, 275 S.E.2d 900 (1981). In *Locke*, the Virginia Supreme Court found timely the claim of a worker who filed his personal injury action years after he was negligently exposed to asbestos. The court in *Locke* determined that the plaintiff's injury, a malignant tumor, actually arose many years after the worker alleged he was exposed to the asbestos. *Id.* at 905, 275 S.E.2d 900. The court held the cause of action accrued, and the statute of limitations began to run, from the date the cancer developed. *Id.* Hoping to draw an analogy to *Locke*, Granahan argues that her claim was timely because she became

sterile within two years of the filing of her claim.

### III.

Despite her arguments to the contrary, *Locke* provides no refuge for Granahan because it is factually distinguishable. The plaintiff in *Locke* could not have filed suit when he was negligently exposed to asbestos because he was not injured at that time. An injury was needed to complete his cause of action. *See Locke*, 275 S.E.2d at 904.[4] Even if she could prove that she became sterile within two years of the filing of her claim, Granahan's action would still be untimely. To survive a challenge based on the statute of limitations, Granahan must prove that her sterility is a separate and distinct injury from the Pelvic Inflammatory Disease that her complaint states was evidenced by "obvious signs" during her visits to Dr. Pearson. Virginia law will not permit this division, however.

Granahan's sterility constituted consequential damage.[5] She was initially injured when, despite recurring pelvic infections, her doctor failed to remove her IUD. The Virginia Supreme Court in *Locke* embraced this distinction between initial and consequential damages.[6] The court in *Locke*,

---

**4.** The court in *Locke* made clear that "injury" for purposes of the statute of limitations meant "positive, physical or mental hurt to the claimant, not legal wrong in the broad sense that his legally protected interests have been invaded." 275 S.E.2d at 904. The harm Granahan suffered, repeated infections and a worsening of her *physical* condition, certainly fits the court's definition of injury.

Furthermore, the court in *Locke* made clear that it was dealing with a unique problem in assessing the moment at which an injury occurs in a case involving mesothelioma, the symptoms of which usually are manifested shortly after the disease actually develops. The court stressed that "the rule we have just articulated is not a so-called 'discovery' rule...." The court noted that under its decision in *Locke* expert testimony may show that an injury actually occurred years before the onset of symptoms but "the limitations period would run from the earlier and not the later time." 275 S.E.2d at 900.

The Virginia Legislature recently addressed the unique situation of determining when the statute of limitations begins to run in cases involving asbestos-related injuries. A 1985 amendment to the Virginia Code provides that a

cause of action for personal injuries from exposure to asbestos accrues when a diagnosis of a disabling asbestos-related injury or disease is first communicated to the person or his agent by a physician. *See* § 8.01–249(4). The Virginia Legislature could have extended the discovery rule to other personal injury cases but chose instead to limit its application to the narrow field of asbestos-related injuries. By implication, the legislature preserved the harsher rule for accrual of causes of actions in all other personal injury cases.

**5.** By "consequential" damages we mean the subsequent damages that flow from the initial harm.

**6.** For other examples of this distinction between initial and consequential damages *see, e.g., Comptroller of Virginia ex. rel. Virginia Military Institute v. King*, 217 Va. 751, 232 S.E.2d 895 (1977) (defective design was initial harm to building and later water damage was consequential damage); *Street v. Consumers Mining Corp.*, 185 Va. 561, 39 S.E.2d 271 (1946) (initial development of disease was first harm suffered, subsequent worsening in severity of symptoms

cites with approval an earlier decision in which it stated that a cause of action accrues if any injury, no matter how slight, occurs upon the completion of a wrongful act or omission. 275 S.E.2d at 905 (quoting *Louisville & Nashville Railroad v. Saltzer,* 151 Va. 165, 170–71, 144 S.E. 456, 457 (1928)). The court in *Locke* also refused to overturn an earlier decision in which it held that a medical malpractice action accrued when a surgical needle was negligently left in a patient's neck rather than the date upon which the needle was discovered. 275 S.E.2d at 907 (citing *Hawks v. DeHart,* 206 Va. 810, 146 S.E.2d 187 (1966)). The court stated the patient in *Hawks* was harmed when the needle was left in her body. 275 S.E.2d at 907. Similarly, Granahan was injured when her IUD was allowed to remain in place.

The Fourth Circuit Court of Appeals has also recently addressed the issue of splitting a plaintiff's consequential and initial injuries to meet statute of limitations filing deadlines. This court in *Brown v. American Broadcasting Co.,* 704 F.2d 1296 (4th Cir.1983) stated that, in Virginia, a statute of limitations does not accrue separately for each set of damages resulting from a wrongful act. The statute of limitations runs against all damages, including damages that do not arise until a future date.[7]

Finally, we note that the Virginia Supreme Court in *Locke* did not explicitly overrule its earlier decision in *Farley v. Goode,* 219 Va. 969, 252 S.E.2d 594 (1979). The facts in *Farley* are strikingly similar to the present case. In *Farley,* a patient accused his dentist of malpractice for failing to diagnose and treat a periodontal disease that resulted in extensive gum and tooth damage. As in the present case, the patient in *Farley* was treated by the defendant for several years and learned of his disease only upon visiting another doctor. 252 S.E.2d at 594. The second doctor's diagnosis and the revelation of the damage resulting from the improperly treated disease occurred after the expiration of the two-year statute of limitations. *Id.* Like Granahan, the plaintiff in *Farley* discovered the first doctor's error after it was too late to file suit.

The Virginia Supreme Court in *Farley* articulated the point in time at which the statute of limitations begins to run on a malpractice action. The court stated:

[w]hen malpractice is claimed to have occurred during a continuous and substantially uninterrupted course of examination and treatment in which a particular illness or condition should have been diagnosed in the exercise of reasonable care, the date of injury occurs, the cause of action for that malpractice accrues,

---

was consequential damage). *But cf. Keepe v. Shell Oil Co.,* 220 Va. 587, 260 S.E.2d 722 (1979) (court criticizes use of initial and consequential damage descriptions to categorize damages as injuries to person or property). *Keepe* may be distinguished, however, because the court in that instance focused on the label attached to injuries (personal or property) in order to apply an appropriate statute of limitations. In the present case, there is no dispute that the injuries suffered by Granahan were to her person.

**7.** *Brown* concerned an action for damages stemming from alleged defamation and conspiracy to injure plaintiff's reputation. The plaintiff in *Brown* contended that under *Locke* the statute of limitations did not begin to run until she learned of an allegedly defamatory broadcast and became emotionally upset. 704 F.2d at 1299–1300. This court disagreed and held the claim accrued for *all* of plaintiff's injuries when the broadcast aired because that was the date she was initially injured and her cause of action became complete. *Id.* at 1300 (citing *Street v.*

*Consumers Mining Corp.,* 185 Va. 561, 395 S.E.2d 271 (1946)).

Another decision by this court that examines the impact of *Locke* on consequential damages is *Large v. Bucyrus-Erie Co.,* 707 F.2d 94 (4th Cir.1984). In *Large,* we found untimely the claim of a quarry worker who sued for respiratory diseases and hearing loss. We noted that the symptoms of the worker's illnesses were apparent more than two years prior to the filing of the suit. *Id.* at 97. In the present case, Granahan states that she became sterile when her tubes closed sometime after February of 1982. However, Granahan also contends that "from 1975 through 1979, Dr. Pearson treated the Plaintiff for repeated episodes of vaginal infections and salpingitis." Appellant's Brief at 1. Since salpingitis is a tubal inflammation (see *supra,* note 1), symptoms of Granahan's illness were evident more than two years before her claim was filed.

and the statute of limitations commences to run when the improper course of examination, and treatment if any, for the particular malady terminates.

252 S.E.2d at 599. Granahan sought treatment from Pearson from 1973 to 1979. Under *Farley*, she was required to bring suit on her malpractice claim within two years of her last visit with Dr. Pearson. This she failed to do.

We agree with the district court that *Farley* is controlling. Granahan was injured when, despite signs of Pelvic Inflammatory Disease, her doctor failed to remove her IUD. Under *Farley*, the statute of limitations began to run from the date of Granahan's last visit with her doctor rather than the date upon which she became sterile. Her infertility was inexorably linked to the illness for which Granahan sought treatment from Pearson.[8]

### IV.

It is unfortunate that Granahan did not discover her infertility until after the Virginia statute of limitations barred her claim against Pearson. We are, however, bound to follow Virginia law. That state has chosen to begin the running of the statute of limitations from the moment a plaintiff suffers an injury. Granahan was injured when the IUD was allowed to remain in her body. Her malpractice claim accrued when her relationship with Dr. Pearson ended. For Granahan, the doctor-patient relationship ended in 1979. This malpractice suit commenced in February of 1984—well past the two-year statute of limitations filing deadline. Granahan's suit was untimely. The district court's decision is therefore affirmed.

AFFIRMED.

8. Granahan cannot separate the injury she suffered when the IUD was left in her body from the tubal blockage that later developed. Her complaint is replete with examples of Granahan's own confirmation that she was actually injured before she became sterile. The complaint states that during the time she was treated by Dr. Pearson, Granahan had obvious signs

of Pelvic Inflammatory Disease which became chronic PID and "this, in turn, has led to tube blockage and permanent infertility." Joint Appendix at 16, Plaintiff's Complaint at paragraph 8. Furthermore, the complaint states that Granahan's injury was "ongoing and continuous up to and beyond August of 1982." *Id.*, Plaintiff's Complaint at paragraph 10.