**Glenna Jackson IRVIN, Plaintiff,**

v.

**Ted F. BURTON, M.D., and Obstetrics & Gynecology, Ltd. of Radford, Defendants.**

**Civ. A. No. 85–1089(R).**

United States District Court, W.D. Virginia, Roanoke Division.

May 23, 1986.

S.D. Roberts Moore, Gentry, Locke, Rakes & Moore, Roanoke, Va., David D. Walker, Salem, Va., for plaintiff.

George Wooten, Fox, Wooten & Hart, Roanoke, Va., for defendants.

## MEMORANDUM OPINION

TURK, Chief Judge.

### I.

This medical malpractice claim comes before the Court on defendants' plea that the

applicable statute of limitations has expired. Both parties have extensively briefed and argued the relevant cases to the Court. After reviewing the controlling precedent established by the Fourth Circuit and the Virginia Supreme Court, the Court concludes that this case must be dismissed.

## II.

This case presents an intriguing factual situation and a troubling issue to the Court. Defendant Ted F. Burton, M.D., is a licensed obstetrician and gynecologist in Radford, Virginia. Plaintiff Glenna Jackson Irvin presently resides in South Carolina. According to the complaint, plaintiff desired in January 1980 to become physically incapable of bearing children. She contacted Dr. Burton concerning the feasibility of performing an operation which would sterilize her. Complaint, ¶ 5. On January 17, 1980, Dr. Burton performed a laparoscopic tubal cauterization on the plaintiff in Radford, Virginia. According to the plaintiff, defendants "warranted" that this procedure would result in her sterilization. *Id.* In spite of the operation, plaintiff became pregnant on or about August 7, 1984. On May 7, 1985, plaintiff delivered a child in Conway, South Carolina.[1] Plaintiff alleges that her pregnancy was due to defendants' failure to touch "one of the plaintiff's fallopian tubes" during the procedure, *id.* ¶ 6, and that such failure breached the standard of due care owed to plaintiff. Plaintiff filed this action December 12, 1985. Defendants contend initially that this action is barred by the applicable statute of limitations.

## III.

The issue in this case is whether, when an obstetrician fails to properly perform[2] a sterilization procedure, the cause of action in Virginia arises when the operation is performed or when the patient-plaintiff later becomes pregnant. The answer is not an easy one, even though several cases have considered the Virginia statute of limitations in medical malpractice claims.

### A.

Jurisdiction in this case is based on diversity of citizenship. Therefore, this Court is bound to apply Virginia law. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.2d 1188 (1938). In Virginia, a plaintiff must file suit for personal injuries within two (2) years after the claim accrues. Va.Code § 8.01–243(A) (1950). The claim accrues and the statute commences when a plaintiff is injured, and "not when the resulting damage is discovered." *Id.* at § 8.01–230. The issue in this case is thus the date of Ms. Irvin's injury.

The relevant Virginia Supreme Court cases are somewhat difficult to reconcile. In *Hawks v. Dehart*, 206 Va. 810, 146 S.E.2d 287 (1966), a doctor failed to remove a surgical needle from plaintiff's neck during an operation in 1946. Plaintiff subsequently discovered the needle in 1962 and brought suit in 1963. The Virginia Supreme Court held that the statute began to run when "the wrongful act was done, and not when the damage occurred and the wrongful act was discovered." *Id.* at 813, 146 S.E.2d at 189. Since the wrongful act occurred in 1946, plaintiff's action was barred by the statute of limitations.

In *Locke v. Johns-Manville Corp.*, 221 Va. 951, 275 S.E.2d 900 (1981), the Supreme Court of Virginia distinguished *Hawks.* In *Locke,* the plaintiff sought damages for malignant mesothelionia which resulted from occupational exposure to asbestos fibers during 1948–1972. Locke retired in 1972 in good health, but he experienced symptoms of lung disease in late 1977 and

---

**1.** Plaintiff's counsel informed the Court at a hearing that the child is completely healthy. The Court expresses no opinion as to whether a cause of action does or should exist in Virginia for the "wrongful birth" of a healthy child or, for that matter, what a parent's damages are in such cases.

**2.** The Court assumes solely for purposes of ruling on defendants' motion that Dr. Burton performed the operation negligently.

early 1978. Although the court explicitly refused to overrule *Hawks*, it held that Locke's complaint was timely filed in 1978, because he was "injured" in 1977 or 1978. Since Locke had no cognizable "injury" in 1972, the court reasoned that barring him from suing in 1978 would "result in the inequity of barring the mesothelioma plaintiff's cause of action before he sustains injury." *Id.* at 959, 175 S.E.2d at 906. According to the *Locke* court, injury occurs when there is "positive, physical or mental hurt to the plaintiff, not legal wrong to him in the usual sense that his legally protected interests have been invaded." *Id.* at 957, 275 S.E.2d at 904–05.

In *Farley v. Goode*, 219 Va. 969, 252 S.E.2d 594 (1979), the Virginia Supreme Court discussed the "continuing treatment exception" to the statute of limitations. In holding that the statute commences when the alleged negligent act occurs, except in cases of continuing treatment for an illness, the court stated:

> [W]e hold under these facts that ... the date of injury occurs, the cause of action for that malpractice accrues, and the statute of limitations commences to run when the improper course of examination, and treatment if any, for the particular malady terminates.

*Id.* at 976, 252 S.E.2d at 599.

Looking at these cases alone, the Court might well conclude that *Locke* partially eroded the harsh *Hawks* rule and that Irvin's injury did not occur until the date her pregnancy commenced. However, Fourth Circuit law is even more adverse to plaintiff, and this Court is equally bound by that Circuit's interpretation of Virginia Supreme Court rulings. In *Granahan v. Pearson*, 782 F.2d 30 (4th Cir.1985), the plaintiff periodically visited the defendant for recurring vaginal infections from 1973–1979. In 1974, Dr. Pearson removed Ms. Granahan's IUD and replaced it with a different one. *Id.* at 31. In August 1982, plaintiff learned from another doctor that she was now sterile due to Dr. Pearson's failure to remove the IUD. She filed suit in February, 1984. *Id.*

Construing *Hawks, Locke,* and *Farley,* the Fourth Circuit concluded that Granahan's complaint was time-barred. Even though she did not become sterile until 1982, her initial injury was when, "despite recurring pelvic infections, her doctor failed to remove her IUD." *Id.* at 32. The sterility which occurred years later was mere "consequential damage," or damage that flows from the initial harm. *Id.* Since the statute of limitations in Virginia does not accrue separately for each set of damages resulting from a wrongful act, *see Large v. Bucyrus-Erie Co.*, 707 F.2d 94 (4th Cir.1983) and *Brown v. American Broadcasting Co.*, 704 F.2d 1296 (4th Cir. 1983), it commenced in 1979 when Granahan last visited the doctor. In dismissing the complaint, the *Granahan* court also specifically noted that the *Locke* result has now been codified into Virginia law. A 1985 amendment provides that an asbestos plaintiff's cause of action does not accrue until the "injury or disease is first communicated to the person or his agent by a physician." *See* Va.Code § 8.01–249(4) (1985). The court noted that although the Virginia Legislature "could have extended the discovery rule" to other malpractice cases, *"by implication, the legislature has preserved the harsher rule* for accrual of causes of action *in all other personal injury cases." Granahan*, 782 F.2d at 32 n. 4 (emphasis added).

### B.

This interpretation by the Fourth Circuit of *Locke* and the recent statutory amendment to the Virginia Code lead to the inescapable conclusion that this case must be dismissed. With the ironic exception that the plaintiff in *Granahan* sued because she became sterile and Ms. Irvin claims she improperly became fertile, there is no distinction between the two cases. As in *Granahan*, Irvin alleges that she last visited the defendant more than two years prior to filing suit. The alleged failure of Dr. Burton to properly perform the sterilization procedure constitutes a negligent act similar to Dr. Pearson's failure to remove Ms.

Granahan's IUD. In contrast to the plaintiff in *Locke*, both Ms. Granahan and Ms. Irvin could have maintained a cause of action immediately after the negligence because each had sustained provable damages. Granahan experienced pain and suffering from a pelvic inflammation and Irvin incurred needless pain and suffering from an unsuccessful operation. The mere fact that most of the damage occurs many years later (when Ms. Granahan became sterile and, conversely, Ms. Irvin became pregnant) does not change Virginia law or create a new cause of action for either plaintiff. *See Caudill v. Wise Rambler, Inc.*, 210 Va. 11, 168 S.E.2d 257 (1969).

### IV.

In summary, the Court concludes that under Virginia law as interpreted by the Fourth Circuit, an obstetrician's negligent failure to properly execute a laparoscopic tubal cauterization on a patient commences the two-year statute of limitations under § 8.01–243. This statute does not begin anew when the patient later learns that she is pregnant. The Court is mindful that the inherent unfairness of the ancient *Hawks* rule is most apparent in cases of latent negligence such as this.[3] However, it is equally obvious that Federal district courts are expected to follow rather than disrupt the existing law in its Circuit. For reasons unknown to the Court, the Virginia Legislature has spurned a general discovery rule adopted in numerous jurisdictions, and the Fourth Circuit has chosen to narrowly construe the *Locke* exception. The complaint must therefore be dismissed.

Plaintiff's complaint shall be dismissed in an order to be entered this date.

---

**3.** The Court echoes the sentiments of another judge in this district, who stated that although he was "bound to follow the Virginia [medical malpractice statute of limitations] law," he was equally "bound by good conscience to express [his] displeasure with the rule." *Joyce v. A.C. & S., Inc.*, 591 F.Supp. 449, 454 (W.D.Va.1984) (Kiser, D.J.), *aff'd*, 785 F.2d 1200 (4th Cir.1986). Under present Virginia law, a woman of 36 with 4 children who undergoes an operation to prevent further offspring, who later becomes pregnant at age 39, and who carries the child to term only to discover it has Down's Syndrome cannot sue because her pregnancy occurred more than two years after the negligent operation. Hypotheticals such as this demonstrate the absurdity of Virginia law as it now stands.

Little does the average Virginia woman who undergoes a cauterization operation realize that she is merely receiving from the doctor a two (2) year warranty against unwanted pregnancy, similar to those extended by microwave and television salesmen. Any pregnancy after that period offers absolutely no recourse for the mother. Apparently the only way a female could avoid this harsh result is to revisit the same doctor at least once every 24 months for an additional incision which could measure the success of the initial operation. The physician's liability for the initial operation could then be extended to the most recent visit by the patient under the "continuing treatment" theory. *Cf. Farley v. Goode*, 219 Va. 969, 252 S.E.2d 594 (1979). Such a requirement is expensive, unrealistic, and undesirable.