**James C. SMITH and Beverly D. Smith, Plaintiffs,**

v.

**DANEK MEDICAL, INC., et al., Defendants.**

No. Civ.A. 95–1113–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

Oct. 9, 1998.

Jack Vernon Altizer, Altizer & Altizer, P.C., Roanoke, VA, Easter Peter Moses, Roanoke, VA, Bettina C. Altizer, Altizer & Altizer, P.C., Roanoke, VA, John J. Cummings, III, Donna S. Cummings, Frank C. Dudenhefer, Jr., Cummings, Cummings & Dudenhefer, New Orleans, LA, Darryl J.

Tschirn, Eric A. Thomson, Tschirn & Thomson, for plaintiffs.

Dabney Jefferson Carr, IV, Mays & Valentine, Richmond, VA, Elizabeth J. Chambers, Cozen & O'Connor, Philadelphia, PA,

Jane Siobhan Glenn, Jones & Glenn, PLC, Roanoke, VA, Thomas R. Harrington, Cozen & O'Connor, Philadelphia, PA, George A. Lehner, Pepper Hamilton, LLP, Washington, DC, Robert W. McFarland, McGuire, Woods, Battle & Boothe, Norfolk, VA, Robert R. Reeder, Cozen & O'Connor, Philadelphia, PA, Robert R. Reeder, Cozen & O'Connor, Philadelphia, PA, Gary Joseph Spahn, Mays & Valentine, Richmond, VA, for Defendants.

## MEMORANDUM OPINION

KISER, Senior District Judge.

Before me now are defendants Danek Medical, Inc., Sofamor Danek Group, Inc., and Sofamor, Inc.'s (collectively "Danek's") motions for summary judgement.[1] Defendants move for summary judgement on the ground that this action is barred by the statute of limitations. Defendants also move for summary judgement against plaintiffs on the merits of plaintiffs' claims. Both parties have fully briefed the issues involved and have presented oral argument. The motions are therefore ripe for disposition. For the reasons set forth herein, the defendants' Motion for Summary Judgement on the Statute of Limitations is GRANTED. Because I find that the plaintiffs' complaint must fail as untimely, I decline to address the merits of the case.

**FACTUAL BACKGROUND**

James C. Smith[2], a 47–year old former mechanic, first injured his back in 1983. After re-injuring his back in October of 1991, he was referred to Dr. Edgar Weaver, a neurosurgeon, who recommended that he undergo spinal fusion surgery. Spinal fusion surgery is a last resort treatment for severe, incapacitating back pain. The objective of spinal fusion surgery is to connect adjacent vertebrae that have become unstable due to disease or injury by packing small chips of bone from the patient's hips between or alongside the affected vertebrae. If the surgery is successful, the transplanted bone eventually fuses with the vertebrae to create solid bony mass, or arthrodesis, that stabilizes the affected area of the spine.

Dr. Weaver performed this spinal fusion surgery on May 27, 1992. At that time, he implanted in Mr. Smith a spinal fixation device, the Texas Scottish Rites Hospital device ("TSRH device"), in order to promote fusion between the different sections of plaintiff's spine. Surgeons use these spinal fixation devices to immobilize the vertebrae while fusion takes place. The device is attached to the patient's spine by hooks, screws, or wires, or a combination of these components. The TSRH device, the kind of device used in Smith's surgery, is secured with pedicle bone screws. The pedicles are two bony tubular arches on either side of the vertebral body. At the time of Smith's surgery, the FDA had cleared Danek's TSRH device for labeling and marketing for a variety of spinal indications, but had not cleared it for fixation

1. At the time of oral argument on these motions, defendants Zimmer, Inc., the American Academy of Orthopedic Surgeons, the North American Spine Society, and the Scoliosis Research Society joined in Danek's motions for summary judgement. Since that time, upon the agreement of all parties and by order of this Court on September 25, 1998, all claims against those defendants have been dismissed with prejudice. Thus, Danek is the only remaining defendant to this action.

2. Mrs. Smith was originally named as a plaintiff because the complaint included a loss of consortium claim. Virginia does not recognize loss of consortium as a cause of action. Defendants correctly pointed this out in their various briefs and plaintiffs have not contested the assertion of non-cognition under Virginia law.

by bone screws to the pedicles of the lumbar spine.[3]

The operation was not a complete success. Plaintiff continued to have varying degrees of back pain following the surgery. Finally, on March, 3, 1994, Smith experienced a sudden onset of extreme pain accompanied by the development of a large knot on his back just under the surface of the skin. He contacted his family physician, Dr. Stone, who told him that the pain was probably caused by the implantation and that he needed to contact his spine surgeon immediately. On March 4, 1994, Smith saw Dr. Weaver, the surgeon who had performed the implantation. Dr. Weaver took x-rays of the plaintiff's back and informed him that the TSRH device had broken or loosened and was working its way out of his back. Dr. Weaver performed an explantation operation the next day.

On October 20, 1995, plaintiffs James C. Smith and Beverly D. Smith filed this personal injury action in this district court based on diversity of citizenship. In the Amended Complaint filed October 29, 1996, Smith raised a variety of claims against a number of defendants based on the design, manufacture, promotion, and sale of the TSRH device. On December 18, 1995, pursuant to 28 U.S.C. § 1407, this case was transferred to a multi-district litigation proceeding in the United States District Court for the Eastern District of Pennsylvania before the Honorable Louis C. Bechtle. *In re Orthopedic Bone Screw Products Liability Litigation*, MDL Docket No. 1014 (E.D.Pa.). After presiding over discovery matters and certain pretrial motions, Judge Bechtle remanded the case to this Court for resolution.

DISCUSSION

## I. Summary Judgement Standard

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgement is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgement as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgement is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In considering a motion for summary judgement, the court is required to view the evidence in a light most favorable to the nonmoving party and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.) (citations omitted), *cert. denied*, 513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 24 (1994). Once the movant has met its burden, "the nonmoving party must come forward with specific facts showing there is a genuine issue for trial" in order to defeat the summary judgement motion. *Matsushita Elec. Co.*, 475 U.S. at 587, 106 S.Ct. 1348.

## II. Motion for Summary Judgement on the Statute of Limitations

The parties to the instant case agree that the Virginia statute of limitations governing personal injury claims is two years. VA.CODE ANN. § 8.01–243(A). The parties disagree, however, as to when the injury triggering the statutory window occurred. For this suit to be timely, Smith's cause of action must not have accrued before October 20, 1993. I find, however, that the injury complained of here had, in fact, occurred prior to that date. This suit is therefore barred by the statute of limitations.

---

**3.** This case, and many like it, was filed following a December 1993 broadcast of the television program "20/20" focusing on the use of bone screws in spinal fusion surgery. The program suggested that the widespread use of pedicle screws in fusion surgeries was improper because it had not been approved by the FDA.

■ Under Virginia law, the limitations period begins to run when the injury, no matter how slight, is sustained and regardless of whether more substantial injuries occur later. *International Surplus Lines Co. v. Marsh & McLennan, Inc.,* 838 F.2d 124, 129 (4th Cir.1988); *St. George v. Pariser,* 253 Va. 329, 484 S.E.2d 888 (1997). It is immaterial that all injuries may not have occurred at the time of the initial negligent act, the running of the statute is not postponed by later additional injury. *Locke v. Johns–Manville Corp.,* 221 Va. 951, 957, 275 S.E.2d 900, 904 (1981). Furthermore, Virginia does not follow a "discovery rule" in applying the statute of limitations. *Joyce v. A.C. & S., Inc.,* 591 F.Supp. 449 (1984). The date that plaintiff discovers the injury is immaterial to the running of the statute. *Hing–Har Lo v. Burke,* 249 Va. 311, 317, 455 S.E.2d 9, 13 (1995). The statute of limitations begins to run at the date of injury even if no diagnosis was made or communicated to the plaintiff until later. *Williams v. E.I. DuPont de Nemours & Co.,* 11 F.3d 464, 466 (4th Cir.1993).

■ It is plaintiff's position that the injury from which this action lies occurred in March 1994 when the TSRH device migrated to the surface of his skin and was surgically removed by Dr. Weaver, thus placing him well within the statutory limitation. Plaintiff argues that the implantation operation of May 1992 may or may not have caused the desired bone fusion or reduction in pain, but that, in itself, is not evidence that the TSRH device was defective or causing injury at that time.[4] I must disagree. The gravamen of Mr. Smith's claims is that the TSRH device affixed by pedicle screws was unreasonably dangerous and should not have been implanted at all. Under broad-based theories of liability, plaintiff seeks damages for any and all injuries incurred from the time of the implantation. He specifically alleges that the pedicle screw fixation device was defectively designed and that the "device could not be inserted safely without a risk of injury to the pedicles and surrounding nerves, vascular structures and tissues." Amended Complaint, ¶ 297. The nature of the injuries complained of and the allegations of design defect and unreasonable dangerousness necessarily fix the accrual of the cause of action at the time of implantation, even though more substantial injury may have occurred later at the time of the internal migration of the device.

Virginia law dictates that I grant summary judgement on the statute of limitations in this case. I recognize, however, the inequity of this outcome in that it deprives this plaintiff, who has clearly suffered some harm, of the opportunity to prove in court that the harm suffered was at the hands of these defendants. I have noted my dissatisfaction with the results of this rule before in the context of asbestos litigation. In *Joyce v. A.C. & S., Inc.,* 591 F.Supp. 449 (W.D.Va.1984), plaintiff James Joyce sought to recover damages from his employer for exposure to asbestos that eventually led to the development of asbestosis. Because it was undisputed that Joyce had first incurred slight asbestos-related injuries, though not asbestosis, in 1970, thirteen years before he brought suit, I was compelled to find that the plaintiff's suit was barred by the statute of limitations. Although that case dealt with

**4.** Plaintiff cites *Hing–Har Lo v. Burke,* 249 Va. 311, 316, 455 S.E.2d 9, 12 (1995), for the proposition that, even if the injury at issue did occur prior to the explantation operation, the defendant cannot succeed on a statute of limitations defense when he has failed to pinpoint with "a reasonable degree of medical certainty" the date of injury. In light of my finding that the injury complained of occurred at implantation, this argument is moot; but it worth noting that, in fact, defendants need not establish as a matter of law the exact date of injury, they need only show that it is more probable than not that the injury occurred outside the two-year window. *Brown v. Plywood Panels,* 67 F.3d 293, 1995 WL 559656 (4th Cir.1995) (citing *Locke,* 221 Va. 951, 275 S.E.2d 900); *See Wade v. Danek Medical, Inc.,* 5 F.Supp.2d 379 (E.D.Va.1998).

the issue of one exposure causing a number of diseases. I find it highly analogous to this case, where one operation is alleged to have caused a number of injuries, the most egregious of which occurred after the statute of limitations had run. In *Joyce,* I observed the "perilous situation" of plaintiffs who face accrual of their cause of action from the date of the initial injury no matter how slight:

At best, if the plaintiff brings a suit before the later developing disease manifests itself and is unable to produce evidence to a reasonable degree of medical certainty that the later disease will manifest itself, he is not going to be able to claim damages for that disease because he will not be able to prove it. On the other hand, if he waits for the disease to manifest itself, and it turns out that the disease does not become manifest until after the statute of limitations has run, then he is likewise barred from recovering for that element of damages.

*Id.* at 454. Likewise, in this case, Smith could not have anticipated the later malfunction of the device and recovered for such; yet his delay in suit now bars recovery for that injury at all.

*Irvin v. Burton,* 635 F.Supp. 366 (W.D.Va.1986), is another case from this jurisdiction with factual parallels to the case at bar. In that case, the plaintiff underwent a surgical sterilization procedure in 1980 to prevent the possibility of future pregnancies. In spite of this operation, four years later, she became pregnant. She sued the doctor who performed the surgery for medical malpractice. The court found, however, that her suit was barred by the statute of limitations, holding that the injury which commenced the running of the statute was the failed surgery of four years before, not the subsequent pregnancy. In his opinion, Judge Turk echoed some of my concerns about this rule:

The Court is mindful that the inherent unfairness of [this] rule is most apparent in cases of latent negligence such as this.

However, it is equally obvious that federal district courts are expected to follow rather than disrupt the existing law in this Circuit. For reasons unknown to the Court, the Virginia Legislature has spurned a general discovery rule adopted in numerous jurisdictions [ ].

Plaintiff also offers an alternative theory for why this suit is not barred. Plaintiff contends that even if the Court rejects the position that the date of injury here occurred on the date of the emergency explantation, Virginia's statute of limitations would nevertheless be tolled pursuant to *American Pipe and Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). Plaintiff asserts that *American Pipe* stands for the proposition that where a class action is filed which gives defendants adequate notice of plaintiffs' claims, relevant statutes of limitations will be tolled until such time as the motion for class certification is denied in order to prevent thousands of cases from being needlessly filed by putative class members in order to protect their litigation rights. *See Crown, Cork, & Seal Co. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), *Chardon v. Fumero Soto,* 462 U.S. 650, 661, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983). Two class actions related to this case were filed during the pendency of Smith's suit. *Brown v. Acromed,* No. 94–1236, 1994 WL 396219 (E.D.La.), a putative nation-wide class action against various pedicle screw manufacturers, including Danek Medical, Inc., was filed in the Eastern District of Louisiana on April 14, 1994, and dismissed on July 13, 1995, fifteen months later. *Zanpirri v. Acromed,* No. 93–7074, the other putative nation-wide class action against the pedicle screw manufacturers was filed in the Eastern District of Pennsylvania on December 30, 1993, and dismissed on February 22, 1995, fourteen months later. Thus, if *American Pipe* is applicable here, these class actions would have tolled the statute of limitations in Smith's claim. bringing him within the two-year statutory period if his injury occurred

any time on or after July 20, 1992. Because I find that the injury occurred two months earlier, in May 1992, I need not address the applicability of *American Pipe* in this context.[5]

CONCLUSION

Because I find that this suit is barred by the statute of limitations, the defendant's Motion for Summary Judgement is GRANTED.

An appropriate order shall issue.

5.  *Wade v. Danek Medical, Inc.,* 5 F.Supp.2d 379 (E.D.Va.1998), is a recent case from the Eastern District of Virginia arising out of this same pedicle screw litigation, in which Danek was also the defendant. Although the tolling issue is not decisive in our case, I do find

Judge Williams' reasoning in *Wade* persuasive. It makes little sense, in cases where there is no overriding federal interest to adopt a rule allowing any meritless class action filed in any federal court in the country to trump the statute of limitations of every state.