## CIRCUIT COURT OF FAIRFAX COUNTY

Wayne A. Barnes et al.

    v.

Gordon L. Head et al.

February 25, 1993

Case No. (Law) 114928

BY JUDGE ROSEMARIE ANNUNZIATA

This matter is before the Court on defendants' demurrers and pleas in bar. Defendants' demurrers are sustained and defendants' pleas in bar are sustained in part and overruled in part for the reasons set forth in the discussion that follows.

Patricia Pardinas-Barnes and Wayne A. Barnes are husband and wife and are the natural parents of Natalia Patricia Barnes. All three are the plaintiffs in this case. The defendants are Fairfax Radiological Consultants, P.C., a professional corporation, and Gordon L. Head, M.D., a radiologist. Dr. Head is employed by defendant Fairfax Radiological Consultants, P.C.

Plaintiffs allege that Patricia Pardinas-Barnes sought the services of the defendants in connection with her pregnancy in the spring of 1989. Mrs. Pardinas-Barnes was 41 years old at the time and was concerned for the health of her child. Mrs. Pardinas-Barnes and Mr. Barnes decided that if the child had serious medical defects, that the pregnancy would be terminated by abortion. Mrs. Pardinas-Barnes further states that on April 10, 1989, Dr. Head and Ms. Woodson performed a sono-

gram on Mrs. Pardinas-Barnes and diagnosed the fetus as normal. Plaintiffs claim that the defendants negligently failed to detect several markings on the sonogram image which indicated the presence of neural tube defects, hydrocephalus, and spinal bifida. Plaintiffs did not become aware of their child's disorders until August 24, 1989, when the infant plaintiff, Natalia Patricia Barnes, was born. Plaintiffs state that they would have elected to terminate. the pregnancy had this information been available to them.

Plaintiffs further allege that Dr. Head was insufficiently trained and incompetent to perform the sonogram tests which he performed on Mrs. Pardinas-Barnes on April 10, 1989. They state that Fairfax Radiological Consultants, P.C., did not take reasonable and prudent steps to ensure Dr. Head's competence to perform sonograms prior to employing him and that Fairfax Radiological Consultants failed to disclose Dr. Head's incompetence to them and held him out as competent to perform sonograms. Plaintiffs further allege that, when, on January 18, 1990, Mrs. Pardinas-Barnes met with Dr. Head to inquire about whether the results of the April 10, 1989, sonogram revealed the fetal defects, Dr. Head prevented Mrs. Pardinas-Barnes from discovering what the tests showed by denying they disclosed any defects.

As a result of the defendants' negligent acts, plaintiffs claim they were deprived of the opportunity to terminate the pregnancy and that the infant plaintiff has suffered severe birth defects requiring multiple surgical procedures in an effort to relieve her several disabilities. They further claim that Mrs. Pardinas-Barnes suffered physical injuries during the birth of her daughter, that they have lost the services of their daughter, that they have incurred costs for medical treatment and suffered destruction of a reasonable family life, emotional distress, mental anguish, pain and suffering, and inconvenience.

Plaintiffs pray that the defendants be found jointly and severally liable to the plaintiffs in the amount of $10,000,000.00 in damages and for plaintiffs' costs.

Pursuant to Va. Code § 8.01–581.2:1, a notice of claim was mailed on August 15, 1991, to Dr. Head and Fairfax Radiological Consultants. The Notice alleged medical malpractice on the part of Dr. Head and the vicarious liability of Fairfax Radiological Consultants under the theory of respondeat superior. After the defendants' request for a medical malpractice review panel was withdrawn, plaintiffs filed this suit on May 7, 1992.

Defendants demur to infant plaintiff's claim which is based on the legal theory known as "wrongful life." Since an action for wrongful life is based on medical malpractice principles, it is governed by Virginia's Medical Malpractice Act. Va. Code § 8.01–581.1 et seq. The defendants contend that a claim for wrongful life is not cognizable under Virginia law and that, in any event, the unborn child is not a patient to whom the defendants owed a duty of care, as defined under the Act. *See Parviz Modaber v. Jessie Marie Kelley*, 232 Va. 60, 66 (1986). Section 8.01–581.1 of the Act defines "patient" as: "a natural person," who "receives or should have received health care from a licensed health care provider." The latter contention will be addressed first.

Defendants argue that the infant plaintiff is not a natural person as a matter of law and rely on the treatment of an unborn child under Virginia's wrongful death statute to support this position. Under the Virginia wrongful death statute, the unborn child is treated as being a part of the mother and is not accorded the status of a natural person. *A fortiori*, it is argued, the unborn child cannot be deemed to fall within the definition of "patient" provided by Va. Code § 8.01–581.1.

The plaintiff contends that, while the infant was not a person until birth, a cause of action based on injury suffered while *in utero* is recognized in this state, *citing Kalafut v. Gruver*, 239 Va. 278, 283–84 (1990) ("[A] tortfeasor who causes harm to an unborn child is subject to liability to the child or to the child's estate for the harm to a child if the child is born alive . . . .").

While it is clear that under Virginia law, the unborn child becomes a "natural person" at the moment of live birth and may thus pursue a claim for personal injury occurring before the birth, *id., see also, Bulala v. Boyd*, 239 Va. 218, 229 (1990), the issue here is not whether an unborn child has a cause of action when born alive. Rather, in this case governed by Virginia's Medical Malpractice Act, the issue is more narrowly drawn and rests on a determination of whether the child was concurrently a natural person and the intended recipient of the medical services in question when the alleged malpractice occurred. *See, Bulala v. Boyd*, 239 Va. at *id.*

In the instant case, the medical care requested and provided was intended to give the parents information upon which they could make an informed choice as to whether or not to continue the pregnancy. The parents' right to abort, under the decision in *Roe v. Wade*, 410 U.S. 113

(1973), is critical to the analysis since, in the absence of the right to act, the need for correct information is moot. *See, Miller v. Johnson*, 231 Va. 177, 182–83 (1986). Under Virginia law there is no parallel right "not to be born" enjoyed by an unborn child which has been identified in this state's statutory, constitutional, or case law. In the absence of such a right, it cannot be said that the defendants had a duty to provide to the infant plaintiff the medical services at issue here. It follows then that a physician-patient relationship did not arise as between the defendants and the infant plaintiff.

This case, on its facts, is thus distinguishable from those underlying the decision in *Bulala v. Boyd*. In the *Boyd* case, the Virginia Supreme Court recognized a duty of medical care owed by the tortfeasor obstetrician to the infant plaintiff at the time of birth, when the child is deemed to be a natural person as a matter of law. *Id.* at 229. The Court in *Boyd* relied on the accepted distinctions made regarding the responsibilities and roles in the birthing process between the obstetrician on the one hand and the pediatrician on the other. 239 Va. at 229–230. ("[A]s we construe the Act, at the moment of live birth, and until the pediatrician assumes responsibility for the care of the newborn, the infant is the obstetrician's 'patient'.")

Even assuming a physician-patient relationship existed between the defendants and the infant plaintiff, the relationship came into being and was terminated before the birth of the child; that is, it came into existence and ended at the time the radiological services were provided, and when the child was not, as a matter of law, a natural person. Va. Code § 8.01–581.1; *compare Bulala v. Boyd*, 230 Va. at *id.* Under the dictates of the Act, therefore, the infant plaintiff cannot be deemed a patient for the purposes of this claim and her claim must fail. Va. Code § 8.01–581.1 et seq.

Finally, even were the infant plaintiff to be deemed a patient as defined by Virginia's Medical Malpractice Act, in my judgment the cause of action brought is not cognizable in Virginia.

Under Virginia law, unless the cause of action falls within the ambit of traditional tort law, it is left to the legislature to establish the action. *See Naccash v. Burger*, 223 Va. at 413. Defendants correctly state that Virginia has not yet recognized a cause of action for wrongful life. If such an action is to be recognized, it must be grounded on traditional tort principles. *See, Naccash v. Burger*, 223 Va. 406, 413 (1982). In light of those principles, the following issues must be addressed to

determine whether the cause of action pleaded is within the scope of Virginia's common law doctrine: did the defendants owe a legal duty to the unborn child, was the duty breached, and did a cognizable, actionable injury result. *Id.*, at 413–414. Having earlier determined there is no identifiable basis in Virginia law which supports the conclusion that an unborn child has a right not to be born, there is no basis for concluding the defendants had a legal duty of care as to her. Furthermore, in the absence of such a right or protected interest, there can be no injury. *See* Restatement (Second) of Torts § 7(1) (1965); *see also, James G. v. Caserta*, 332 S.E.2d 872, 880 (W. Va. 1985). Thus, the claim fails on this ground as well.

The few courts which have recognized the existence of the cause of action appear to have grounded the decision not on tort principles, but on the conclusion that it would be unjust to give relief to the parents for a wrongful birth claim while denying relief to the child. *See, e.g., Procanik v. Cillo*, 478 A.2d 755, 761–62 (N.J. 1984); *Turpin v. Sortini*, 643 P.2d 954, 966 (Cal. 1982); *see also* 75 Ky. L.J. 585 (1986). Even in those cases, the relief accorded has been limited to the recovery of special damages such as expenses for specialized training and teaching incurred subsequent to the child reaching majority. *Id.* The vast majority of courts have declined to recognize wrongful life actions. There are numerous grounds upon which the courts have declined to find a cognizable cause of action for wrongful life. *See* 75 Ky. L.J. at 630; *see also* 83 A.L.R. 3d, Tort Liability for Wrongfully Causing One to be Born, § 1 et seq. (1973 & Supp. 1985). They include (1) the impossibility of calculating damages based on a comparison of nonexistence with impaired existence; (2) the absence of a fundamental right not to be born or, conversely, to be born as a whole, functional human being; (3) the overwhelming social and legal implications of recognizing wrongful life actions; (4) the metaphysical, theological or philosophical nature of the issues which require the weighing of factors foreign to judicial decision making. *See Smith v. Cote*, 513 A.2d 341, 353 (N.H. 1986) ("[The court] has no business declaring that among the living are people who never should have been born."); *see also, Becker v. Schwartz*, 413 N.Y.S.2d 895, 900-01 (1978). The consensus among the Courts seems to be that this matter is best left to the legislature.

The defendants next argue on demurrer that the plaintiffs are confined in their recovery to the amount set in Virginia Code § 8.01–581.15 (1950, as amended). The statutory cap set forth in this

code section limits recovery for "any injury" to a single "patient" to one million dollars, regardless of the number of claims, claimants or theories of recovery. Thus, if each of the plaintiffs in this case is treated as a patient, each will enjoy a separate cap on recovery.

Under the facts of this case, I find the plaintiffs are limited in their recovery, collectively, to the amount set by the Act. First, in light of the earlier ruling that the child is not a patient as defined under the Act, she is not entitled to a statutory cap separate from that of her mother. Second, the father's claim for damages, being derivative of that of the mother, *Naccash v. Burger*, 223 Va. at 412, is subsumed within the statutory cap limiting the mother's recovery under § 8.01–581.15. *See, Boyd v. Bulala*, 239 Va. 218, 230 (1990); *Speet v. Bacaj*, 237 Va. 290, 298 (1989); *Boyd v. Bulala*, 905 F.2d 764, 767 (4th Cir. 1990).

The defendants' demurrer to the plaintiffs' claim for damages for inconvenience, pain and suffering, loss of the child's services and interference with normal family life suffered as a result of the wrongful birth of the child is sustained for the following reasons. First, under Virginia law, damages in cases involving wrongful birth claims appear to be limited to the recovery of expenses incurred in the care and treatment of the affected child and for the emotional distress suffered by the parents. *Naccash v. Burger*, 223 Va. at 414–415. Furthermore, under Virginia law, claims for pain and suffering and inconvenience are cognizable only where physical injury results from the defendants' negligence. *See, Virginia Ry. Co. v. Farr*, 147 Va. 217, 232–33 (1927); *McGowan v. Tayman*, 144 Va. 358, 365 (1926); *Hailes v. Gonzales*, 207 Va. 612, 613–614 (1966); *Norfolk Ry. & Light Co. v. Spratley*, 103 Va. 379, 388 (1905).[1]

Thus, the father is barred from recovering for such a claim as he makes no allegation of physical injury. The mother's claim, while based on an allegation of physical injury, is barred because her physical injury is not a foreseeable consequence of any failure to read the sonogram properly. Since any duty owed plaintiffs relates to their right to abort a defective fetus and not to their right to abort *per se*, any physical injuries suffered by the mother cannot be deemed a foreseeable result of carrying a defective child to term. Accordingly, they

---

[1] Generally, the terms "pain and suffering" are used "to mean the pain and suffering resulting from a physical impact . . . When there is no physical impact, the sensation is usually called mental anguish." 22 Am. Jur. 2d § 240 at 193.

cannot support her claim for pain, suffering and inconvenience. *See, Naccash v. Burger*, 223 Va. at 414; *Miller v. Johnson*, 231 Va. 177, 183 (1986).

Plaintiffs' claim for damages for defendants' interference with normal family life must also be dismissed. This claim is analytically indistinguishable from a claim for loss of enjoyment of life which is not compensable under Virginia law. *Bulala v. Boyd*, 239 Va. at 232. Furthermore, such damages are conjectural and cannot be established with reasonable certainty. *See, Miller v. Johnson*, 231 Va. at 187. Finally, I can find no authority supporting the proposition that recovery may be had for loss of the child's services under a wrongful birth theory of liability. This right of action is deemed to be in the child and arises only out of a tortfeasor's negligence causing injury to the child. *Moses v. Akers*, 203 Va. 130 (1961); *see also*, 59 Am. Jur. 2d, *Parent and Child*, § 97 at 238. Thus, where the child has no cause of action, the parents may not recover. *Id.*

Defendants raise three pleas in bar to the plaintiffs' claims. Defendants first claim that plaintiffs filed their Notices of Claim for wrongful birth after the statute of limitations had expired, contending the cause of action accrued when the mother's right to terminate the pregnancy ended. Relying on *Roe v. Wade*, 410 U.S. 113 (1973), the defendants claim that the mother could no longer legally exercise her right to an abortion after the second trimester and that once her right to abort terminated, the plaintiffs' injuries were complete, thus beginning the running of the statute of limitations.

In support of their positions, defendants cite the holding in *Locke v. Johns Manville Corp.*, 221 Va. 951 (1981). *Locke* stands for the proposition that a cause of action does not accrue until the injury to the plaintiff is complete. *Id.* at 957–58 ("[T]he running of the time is tied to the fact of harm to the plaintiff, without which no cause of action would come into existence . . ."). As in *Locke*, the critical question here is: when were the plaintiffs injured. For the reasons stated below and in light of the answer to this question, the defendants' plea as to this claim is overruled.

The injury claimed in the action for wrongful birth is the (1) denial of the opportunity to accept or reject the continuation of the pregnancy, and (2) the birth of a defective child. *Naccash v. Burger*, 223 Va. at 414. In my judgment, the injury in this case did not become complete until the birth of the child on August 24, 1987. Before the birth of a

child, the plaintiffs had only a potential claim because the loss of the opportunity to abort is of no consequence unless the pregnancy results in a live birth. Clearly, had the plaintiffs sued in the third trimester of the pregnancy, on the theory they no longer had the right to abort, they could not prove actual damages, their harm being no more than a possibility. Likewise, had the child been stillborn, the plaintiffs could not claim harm arising simply from the earlier lost opportunity to abort.

Contrary to the contentions of the defendants, the plaintiffs' position is not rooted in the "discovery" rule, a rule consistently rejected by the Virginia Supreme Court. *See, Locke v. Johns Manville Corp.*, 221 Va. at 961–62. Rather, the issue in the present case is analogous to the issue addressed and decided in *Louisville and Nashville Ry. Co. v. Saltzer*, 151 Va. 165, 170–71 (1928) ("[W]here the damage . . . arises from a cause not then immediately effective . . . the cause of action does not arise until the injury can be shown.")

Here the cause of action is for the birth of a defective child in contravention of the parents' right to abort as a result of the defendants' alleged negligence; it is not the mere tortious deprivation of the right to abort, without more.

The defendants also raise a plea in bar against the plaintiffs' claims for damages based on certain medical expenses they incurred on behalf of the infant plaintiff, contending the claim is barred by the two-year statute of limitations. In light of the ruling that the cause of action for wrongful birth occurred at the time of the child's birth, the plea in bar is overruled.

Finally, the ruling on defendants' plea in bar to the plaintiff's action against the defendant corporation is deferred pending further argument on this issue by counsel.