## CIRCUIT COURT OF THE CITY OF WINCHESTER

Nancy Hollingsworth

v.

Shenandoah Medical Imaging, Inc., et al.

January 18, 1996

Case No. (Law) 95-108

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on December 28, 1995, for argument on the Plea of the Statute of Limitations of Defendants Knull and Shenandoah Medical Imaging, Inc. Caitlin Palacios, Esquire, and John S. Lopatto, Esquire, appeared for the Plaintiff; Brian K. Brake, Esquire, appeared for the Defendants Knull and Shenandoah Medical Imaging, Inc.; and Rodney Young, Esquire, appeared for the Defendant Weidower and Winchester Surgical Consultants, Inc. Upon consideration of the argument of counsel and their memoranda of authorities, the Court made the following decision to sustain the plea of the statute of limitations.

### I. Statement of Material Facts

The following facts, which are viewed most favorably to the Plaintiff, are established in the pleadings for the purpose of ruling on the plea of the statute of limitations.

This is a medical malpractice action arising from Alan F. Knull's, Shenandoah Medical Imaging's, John E. Cross', and Winchester Women's Specialists' diagnosis and treatment of Nancy Hollingworth's breast cancer.

On or about June 4, 1990, Dr. Cross, Plaintiff's obstetrician, now deceased, ordered a mammogram for Nancy Hollingsworth. The mammogram was performed at Winchester Women's Specialists by Sandra Staton and interpreted, pursuant to a contract between Shenandoah Medical Imaging and Winchester Women's Specialist, by an employee of Shenandoah Medical Imaging, defendant, Alan F. Knull, M.D.

Dr. Knull's interpretation was as follows:

> Moderately dense parenchymal pattern is seen with benign calcification in the left breast. No dominant mass or suspicious microcalcification is identified.

Dr. Knull's impression from the film was:

> No radiographic evidence of malignancy. In view of the patient's age and parenchymal pattern, suggest follow-up examination in approximately one year.

Dr. Knull ordered only the standard follow-up which, at that time, for this patient was one to two years. Deposition of Dr. Stafford at pp. 20-21. Subsequent to Dr. Knull's interpretation of the films, he returned the films with a copy of his report to Winchester Women's Specialists along with his recommendations regarding follow-up.

Mrs. Hollingsworth continued to seek treatment from Winchester Women's Specialists. Such treatment included examinations to determine the presence of any pathologies suspicious for cancer and necessarily included orders for follow-up mammograms.

On October 7, 1991, a second follow-up mammogram was ordered by Dr. Cross and performed by Sandra Staton of Winchester Women's Specialists. The mammogram was again sent to Shenandoah Medical Imaging for interpretation. All mammograms performed at Winchester Women's Specialist are sent to Shenandoah Medical Imaging for interpretation and have been since at least 1990.

Although the report for the second mammogram was dictated by Dr. Read, the report was reviewed and signed by Dr. Knull prior to being returned to Winchester Women's Specialists. Dr. Read apparently never saw the transcribed report prior to its being returned to Winchester Women's Specialists. The report noted malignant calcifications in the same area Dr. Knull had found calcifications in June, 1990.

Due to the malignant appearing calcifications, Dr. Read recommended immediate action in the form of a biopsy. Pursuant to the recommendation

of Dr. Read, a biopsy was performed by Dr. Wiedower which revealed the presence of an invasive carcinoma. The carcinoma was ultimately located in the spot where Dr. Knull had previously noted calcifications, but determined them to be benign.

On September 24, 1993, plaintiff, Nancy Hollingsworth filed a Motion for Judgment against Dr. Knull, Shenandoah Medical Imaging, Winchester Women's Specialists and the Estate of Dr. Cross alleging that they had committed medical malpractice in failing to properly and timely diagnose Ms. Hollingsworth's condition.[1] Defendants Shenandoah Medical Imaging and Dr. Knull claim that the statute of limitations expired two years prior to the Plaintiff's filing of her motion for judgment in September, 1993.

Plaintiff claims that Alan F. Knull, a radiologist, employed by Shenandoah Medical Imaging, Inc., committed malpractice by improperly interpreting a mammogram performed on the plaintiff on June 4, 1990.

Plaintiff contends that she suffered from cancer of her left breast on June 4, 1990, which continued to grow from that time through September 1991, and that she was subsequently diagnosed as having intraductal comedo carcinoma.

Plaintiff contends that Dr. Knull's alleged misinterpretation of the June 4, 1990, mammogram allowed her condition to either change from a pre-cancerous to a cancerous condition, or in the alternative allowed the cancer to continue to grow (Supplemental Answers to Request for Admission, ¶¶ 31, 32) (Exhibit C).

As a result of Dr. Knull's alleged negligence, plaintiff contends the cancer grew causing soreness in her left breast and a lump which grew from the size of one pea to approximately two to three peas by September, 1991 (Request for Admission, ¶¶ 26, 27, 28, 29, 31, 32).

Plaintiff further claims that the cancer present in her breast in September, 1991 which caused soreness and pain was the same cancer that Dr. Knull allegedly failed to diagnose in June, 1990 (Supplemental Answers to Request for Admissions, ¶ 32).

Plaintiff admits to experiencing an injury in the form of a lump in her left breast which was painful to the touch on May 21, 1991 (Request for Admission, ¶ 28), and that by September, 1991, the lump had grown to the size of two to three peas.

---

[1] The action against Dr. Knull and Shenandoah Medical Imaging was nonsuited and filed again within the six month period as prescribed by Virginia Code Ann. § 8.01-380.

Plaintiff has identified Gary B. Whitman, M.D., as an expert on the diagnosis and treatment of breast cancer and the nature and extent of the Plaintiff's injury (Answer of Nancy Hollingsworth to James S. Wiedower, M.D., and Surgical Consultants of Winchester, P.C.'s First Interrogatories, p. 12). (Exhibit E.) According to the Plaintiff's Answers to Interrogatories, Dr. Whitman will testify that an interval breast cancer developed as a result of Dr. Knull's alleged failure to diagnose precancerous cells in June of 1990, and that plaintiff began to palpate a mass near her left nipple in the early summer of 1991.

## II. *Conclusions of Law*

Pursuant to Virginia Code § 8.01-243(A) "every action for personal injuries, whatever the theory of recovery . . . shall be brought within two years after the cause of action accrues."

Virginia Code § 8.01-230 provides that: "in every action for which a limitation period is prescribed, the cause of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person . . . ."

In medical malpractice actions, where the health care provider's negligence is coincident with an injury to the plaintiff, the plaintiff's right of action accrues when the act of malpractice is committed, not when it is discovered. *See Farley v. Goode*, 219 Va. 969, 975, 252 S.E.2d 594 (1979) (although the right of action accrued at the time of misdiagnosis, the statute of limitations did not begin to run until the termination of the doctor's treatment of the patient); *Scarpa v. Melzig*, 237 Va. 509, 379 S.E.2d 307 (1989) (plaintiff's injury occurred when she was operatively denied the complete sterilization she requested, not when she later became pregnant); *Hawks v. DeHart*, 206 Va. 810, 146 S.E.2d 187 (1966) (injury occurred when the surgical needle was negligently left in the plaintiff's neck, not when the plaintiff later discovered that the needle was in her neck which was after the Statute of Limitations had run), and *Granaham v. Person*, 782 F.2d 30 (4th Cir. 1985) (plaintiff's cause of action accrued when physician negligently failed to remove I.U.D. not years later when she discovered that she was infertile because of pelvic inflammatory disease caused by the failure to remove the I.U.D.).

In cancer cases, where the negligent act is not coincident with injury to the plaintiff, Virginia follows the rule that "the statute of limitations runs, not from the date of the [health care] practitioner's wrongful act or omission, but from the date the resulting damage develops." Annotation, *When*

*Statute of Limitations Commences to Run against Malpractice Action against Physician, Surgeon, Dentist, or Similar Practitioner*, 80 A.L.R.2d 368, 377 (1961). *Accord* Restatement (Second) of Torts § 899, comment c, "A cause of action for negligently harming a person or thing is complete when the harm occurs."

The failure to diagnose disease, especially cancer, presents a dilemma for the courts. The insidious nature of cancer is such that a physician could negligently fail to detect a tumor or growth, which should have then been treated in the exercise of proper medical judgment, but years might elapse before the cancer develops or the patient experiences symptoms which would prompt the reasonably prudent person to consult a physician about those symptoms; by that time, her condition might be too far advanced to be successfully treated, and the statute of limitation would have run on her failure to diagnose right of action if that action accrued when the act of negligence occurred. The Supreme Court of Virginia first confronted this dilemma in *Locke v. Johns-Manville Corp.*, 221 Va. 951, 275 S.E.2d 900 (1981), where the plaintiff contracted mesothelioma from asbestos exposure and filed a products liability action for personal injury arising from occupational exposure to asbestos fibers. The plaintiff was last exposed to the asbestos in 1972, he had no problems, and his chest x-ray in April 1978 was normal, but x-rays taken in May 1978 showed an abnormality, which was later diagnosed as mesothelioma, a cancer unique to asbestos exposure. If the last exposure was the date on which the plaintiff's right of action accrued, his claim was obviously barred by the statute of limitations, but at that early date the plaintiff was perfectly healthy and has no health problem related to his asbestos exposure. To resolve this dilemma, the Supreme Court held that:

> [W]e do not hold that the foregoing rule means the limitation period does not begin to run until the initial diagnosis is communicated to the victim or even until the first diagnosis is actually made. *We merely conclude that the accrual point is when damage occurs*. Under this rule, it is conceivable that when the disease manifests itself by symptoms, such as pain, discomfort or impairment of function, expert medical testimony will demonstrate the injury occurred weeks, months or even years before onset of the symptoms. Thus, the cause of action would accrue and the limitations period would run from the earlier and not the later time.

Contrary to defendants' argument, the rule we have just articulated is not a so-called "discovery" rule, and plaintiff does not advocate that we embrace such a theory. We adhere to our belief, expressed in *Virginia Military Institute v. King*, 217 Va. at 760, 232 S.E.2d at 900, that adoption of a discovery rule, which triggers the running of the statute only when the injury is discovered or should have been discovered in the exercise of reasonable diligence, must be accomplished by the General Assembly. [Emphasis added.]

In response to this case and others, the General Assembly passed a discovery rule for asbestos-related diseases, Va. Code § 8.01-249.4, and there is no such legislation for breast cancer.

In *Hing-Har Lo v. Burke*, 249 Va. 311, 317, 455 S.E.2d 9 (1995), the physician was sued in 1992 for failing in 1988 to diagnose a pancreatic cyst, which later became malignant. The Supreme Court ruled that the statute of limitations had not run on the plaintiff's right of action, because:

[L]ike the plaintiff in *Locke*, Burke suffered a physical hurt only when the cancer developed. *Since there is no evidence here showing when that occurred, Dr. Lo has failed to meet her burden of proving when Burke sustained the injury.*

We disagree with Dr. Lo's contention that our decision in *Scarpa v. Melzig*, 237 Va. 509, 379 S.E.2d 307 (1989), compels a different result. In *Scarpa*, we held that the statute of limitations begins to run when any injury, though slight, is sustained as the consequence of an alleged wrong, despite the fact that greater damage from the same wrong may be sustained at a later date. *Id.* at 512, 379 S.E.2d at 309 . . . .

In contrast, in the present case, there is no evidence that Burke suffered any positive, physical or mental hurt at or near the time she submitted to the CT scan procedure. Rather, the only evidence of injury is the onset of cancer in her pancreas. Thus, under the principles expressed in *Locke* and *Scarpa*, Burke did not sustain an injury, and the statute of limitations did not begin to run, until her cyst became malignant.

We also emphasize that, by this analysis, we do not adopt in a case such as this a so-called "discovery" rule in which the limitation period does not begin to run until the initial diagnosis is made or is communicated to the injured person. Instead, we hold

> only that the cause of action accrues when such an injury actu-
> ally occurs. *Locke*, 221 Va. at 959, 275 S.E.2d at 905-06; but cf.
> Code § 8.01-249. Thus, under this analysis, a cause of action can
> accrue before a disease of this kind manifests itself by symp-
> toms, since *it is the onset of the disease itself that triggers the
> running of the limitation period. Id.* at 959, 275 S.E.2d at 905.

*Id.* at 317.

The *Lo* decision turned on the fact that the defendant, who was relying on the defense of the statute of limitations, has the burden of proving when the plaintiff sustained injury. While it is true, as noted in *Locke v. Johns-Manville, supra* at 959, that "when the disease manifests itself by symptoms, such as pain, discomfort or impairment of function, expert medical testimony will demonstrate that the injury occurred weeks, months, or even years before onset of symptoms," nonetheless, the facts must be viewed prospectively not retrospectively in making the statute of limitations decision. That is, the facts must be examined from the standpoint of the reasonable plaintiff and her examining physicians as the plaintiff's disease progressed in deciding when the injury occurred, not viewed in omniscient hindsight given the entire medical record of the plaintiff as it historically developed.

The *Locke* and *Hing-Har Lo* rule is that right of action for the failure to diagnose a precancerous condition is when the cancer becomes malignant. From a purely scientific point of view, this could be when the first malignant cancer cell forms, but the formation of the first cell is not when the plaintiff's cause of action accrues. From a legal standpoint, the burden is on the Defendant relying on the statute of limitations to prove when the plaintiff "suffered positive, physical or mental hurt." *Hing-Har Lo v. Burke*, 249 Va. 311, 317. As noted in the Restatement (Second) of Torts § 899, comment d (speaking specifically of trespass): "In some cases . . . in which the defendant has done an act that may have a permanent inju- rious effect, but when the effect is problematical and no harm is observable, the statute of limitations does not begin to run until some portion of the harm becomes observable." The purpose of statutes of limitation is to "compel the prompt assertion of an accrued right of action; not to bar such a right before it has accrued." *Caudill v. Wise Rambler*, 210 Va. 11, 13, 168 S.E.2d 257 (1969); quoted with approval *Stone v. Ethan Allen, Inc.*, 232 Va. 365, 370, 350 S.E.2d 629 (1986). Formation of the first cancer cell may have a place in the ontology of oncology, but grafting it onto the law of the statute of limitations would breed confusion and produce absurd

results. "[A] statute should never be construed so that it leads to absurd results." *Branch v. Commonwealth*, 14 Va. App. 836, 839, 419 S.E.2d 422, 424 (1992).

Therefore, in a breast cancer case such as this, the plaintiff's right of action accrues at the first point in time at which a reasonably prudent physician undertaking an examination of the patient for breast cancer would then detect the cancer. As in *Locke*, an examination in April might be negative, but if exam the next month would show the cancer, then that is when the plaintiff's right of action accrued. Like *Locke*, in this case a month or several months may be the critical time.

According to plaintiff's own expert, Dr. Whitman, the alleged diagnosis by Dr. Knull resulted in the development of cancer and a mass in plaintiff's left nipple in the summer of 1991. The original Motion for judgment was filed on September 24, 1993, which is more than two years after both the time that Dr. Whitman opines that the cancer had formed and the time that the Plaintiff experienced a lump in her left breast which was painful to the touch by May 21, 1991 (Plaintiff's response to Defendants' Request for Admission, No. 28), and which lump grew from the size of one pea to the size of three peas and was painful and was cancerous by September 1991. Plaintiff's response to Defendant Request for Admission Nos. 29-31. Reasonable persons could not differ on the fact that by September 1991, the Plaintiff's breast cancer had developed to the point that it would have been diagnosed by a reasonably prudent physician examining the patient for the presence of breast cancer. As early as May 21, 1991, when the lump was painful, and most certainly by September 1991, when the lump has trebled in size and the breast was painful, the Plaintiff had suffered a "positive, physical hurt," and that is when she sustained an observable injury and the statute of limitation began to run. *See Locke v. Johns Manville Corp.*, *supra* at 957; and *Kennedy v. Wheeler*, 36 Va. Cir. 176 (1995).

Summary Judgment is appropriate if there is no material fact genuinely in dispute. Supreme Court Rule 3:18; *Carson v. LeBlanc*, 245 Va. 135, 139, 427 S.E.2d 189 (1993). In *Metro Machine Corp. v. Mizenko*, 244 Va. 78, 83, 419 S.E.2d 632 (1992) citing *Gaudet v. Exxon Corp.*, 562 F.2d 351, 355 (5th Cir. 1977), *cert. denied*, 436 U.S. 913 (1978), the Supreme Court analyzed the character of the genuine issue of fact criterion governing the Court's disposition of a motion for summary judgment and stated:

> [T]he issue of fact must be "genuine." When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as

> to the material facts . . . . In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

While the Supreme Court of Virginia frowns on the short-circuiting of litigation where there are genuine issues of fact in dispute or conflicting inferences which may be drawn from uncontested facts, *see Renner v. Stafford*, 245 Va. 351, 429 S.E.2d 351 (1993), and *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 431 S.E.2d 277 (1993) (ruling on demurrer), there is no genuine issue of fact in dispute or conflicting inferences upon which reasonable persons could differ in this case with respect to the fact that the Plaintiff's cancer had developed by September 1991 to the point that it had become painful. Plaintiff's Responses to Requests for Admissions, plaintiff's own expert, and defendant's expert all show that plaintiff sustained some positive physical harm between the June 4, 1990, mammogram and at the latest by September 1991. Because the Motion for Judgment was not filed within two years of injury, which at the latest was September 1, 1991, the plaintiff's claim is time barred.

In the context of the physician-patient relationship, there is one additional principle governing the determination of the accrual of the Plaintiff's cause of action for purposes of the application of the statute of limitations which is pertinent to this case. If there existed a physician-patient relationship where the patient was treated for the same or related ailments for a continuous and uninterrupted course of treatment, then the Plaintiff may wait until the end of that treatment by his physician before being required to file an action for medical malpractice which occurred during that treatment. *Grubbs v. Rawls*, 235 Va. 607, 613, 369 S.E.2d 683 (1988). *Accord, Justice v. Natvig*, 238 Va. 178, 180, 381 S.E.2d 8 (1989) (For statute of limitations purposes, treatment by subsequent health care providers to whom the patient was referred for treatment by the first physician does not interrupt the treatment for statute of limitations purposes, so long as the first physician, who committed the malpractice, continues to treat the patient for the same condition.). For the continuing treatment rule to apply, the following elements are required: (1) there must be a continuous course of treatment with the Defendant and (2) the treatment must be for the same or related ailments.

Under the continuous treatment rule, "the date of injury incurred, the cause of action for that malpractice accrued and the statute of limitations

commenced to run when the improper course of examination and treatment for the particular malady terminated." *Fenton v. Danaceau*, 220 Va. 1, 4, 255 S.E.2d 349 (1979). Continuous treatment is "diagnosis and treatment for the same or related illnesses or injuries, continuing after the alleged act of malpractice." *Farley v. Goode*, 219 Va. 969, 979, 252 S.E.2d 594 (1979).

"When the alleged malpractice consists of a single isolated act," the continuous treatment exception to the statute of limitations does not apply. *Keller v. Denny*, 232 Va. 512, 518, 252 S.E.2d 327 (1987). In *Abercrombie v. Fauquier Hospital, Inc.*, (Circuit Court of Fauquier County, Law No. 93-60, 1993), the Court held that the relationship between the plaintiff patient and the hospital terminated upon plaintiff's discharge from the hospital notwithstanding his subsequent out-patient admissions, and the continuing care exception did not extend the accrual of the plaintiff's cause of action. Similarly, in *Coakley v. Orr*, 6 Va. Cir. 170 (Loudoun County 1984), the Court held that the relationship between a pharmacist and a customer did not justify application of the continuing treatment rule since the "pharmacist does not know whether he will ever see a particular customer again." *Id.* at 172. This is also true of the hospital, whereas the physician, once having undertaken a course of treatment, may not abandon that treatment of that patient until it is completed or reasonable provisions for its completion have been made. The Plaintiff relies on *Johnson v. Capital Area Permanente Group*, 30 Va. Cir. 107 (Fairfax 1993), in which the court held that the continuing treatment rule was applicable to a medical testing service that performed tests misdiagnosing the Plaintiff as HIV-positive, but this court respectfully disagrees with the conclusion reached in that case.

As the Plaintiff correctly observes a number of jurisdictions hold that "where the treatment is continuing, the limitations period does not begin to run against a malpractice action until termination of the patient's treatment. *See* Annot., 80 A.L.R.2d 368, *supra* at 380. Such jurisdictions focus on the course of treatment without the additional requirement of the continuing individual physician-patient relationship. While the Virginia Supreme Court is cognizant of such authorities, *see, e.g. Farley v. Goode*, 219 Va. 964, 976-979, it has consistently focused on both the individual physician-patient relationship as well as the continuous course of treatment and held that both are requirements for the continuous treatment exception to apply. As the Supreme Court noted in *Grubbs v. Rawls*, 235 Va. 607, 612 (1988):

In *Farley* we added an essential limitation on the rule of continuing treatment. We said it did not apply simply to a continuation of the physician-patient relationship. Instead, for the rule to apply, there had to exist continuing diagnosis and treatment for the same or related illnesses or injuries after the alleged acts of malpractice. We added further that the *Farley* rule applied only to "a continuous course of improper examination or treatment which is substantially uninterrupted" and not to single, isolated acts of negligence.

Virginia has yet to adopt the broader course of treatment rule for purposes of applying the continuous treatment exception to the statute of limitations in professional malpractice actions, for whose application the Plaintiff argues in this case.

Courts in other jurisdictions have determined that the cause of action for alleged malpractice against a hospital accrues when the patient is treated at the hospital, and that, when discharged, the continuing treatment exception to the statute of limitations does not apply to subsequent admissions at the hospital, even where the Plaintiff's attending physician may be the same. *Meier v. Huntington Hosp.*, 588 N.Y.S.2d 421 (A.D. 2 Dept. 1992) (plaintiff's subsequent admissions as directed by her attending physician was a renewal rather than a continuation of the hospital-patient relationship); *Rodrigo v. Brookdale Hosp.*, 599 N.Y.S.2d 626 (N.Y. A.D. 2 Dept. 1993) (hospital had no control over the course of the patient's treatment during the time she was in the hospital under her attending physician's care, because the hospital did not control the patient's course of treatment, it was not an unbroken course of continuous treatment rendered by the hospital); and *Smythe v. Consenqco*, 380 N.W.2d 478 (Mich. App. 1985) (where the physician performed an operation on the plaintiff at the hospital, the plaintiff was discharged but then treated by the same surgeon for two additional months, the surgeon's continued treatment of the plaintiff did not constitute a continuing course of treatment by the hospital, and the plaintiff's cause of action against the hospital accrued upon her discharge).

In this case, Dr. Knull's two readings of the x-rays in June 1990, and again in October 1991, were single, isolated acts, they were not continuous treatment of the Plaintiff, so the continuing treatment rule has no application to the cases against Dr. Knull and Shenandoah Medical Imaging.

### III. *Decision*

For the foregoing reasons, it is adjudged and ordered that the Plea of the Statute of Limitations of defendants Knull and Shenandoah Medical Imaging, Inc., is sustained, and the Motion for Judgment is dismissed, with prejudice, as to the defendants Alan F. Knull and Shenandoah Medical Imaging, Inc.