Present: Kinser, C.J., Lemons, Millette, Mims, McClanahan, and Powell, JJ., and Koontz, S.J.

FORD MOTOR COMPANY

v.    Record No. 120283

WALTER E. BOOMER, ADMINISTRATOR

OPINION BY
JUSTICE LEROY F. MILLETTE, JR.
January 10, 2013

HONEYWELL INTERNATIONAL, INC.

v.    Record No. 120299

WALTER E. BOOMER, ADMINISTRATOR

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

These paired appeals arise out of a jury verdict against Honeywell International Incorporated[1] and Ford Motor Company for the wrongful death of James D. Lokey, caused by mesothelioma resulting from exposure to asbestos in dust from Bendix brakes installed in Ford and other vehicles.

On appeal, Ford assigns error to: (1) the circuit court's jury instructions as to causation; (2) its admission of plaintiff's expert testimony; (3) the finding of evidence sufficient to show that Ford's failure to warn was the proximate cause of the harm; and (4) the finding of evidence sufficient to show proximate cause despite a more likely

---

[1] Honeywell, the successor-in-interest to Bendix, is referred to herein as Bendix.

alternative.  Bendix echoes the first three arguments.  For the reasons stated herein, we reverse and remand.

## I.  Background

Lokey was diagnosed with mesothelioma, a malignant cancer of the pleura of the lungs, in 2005.  He passed away in 2007 due to complications related to his disease.  Lokey testified at trial via a de bene esse deposition taken prior to his death.  His son-in-law, Walter Boomer, is the Administrator of his estate.  The relevant facts as presented at trial were as follows:

Lokey served as a Virginia State Trooper for 30 years. Beginning in 1965 or 1966, for approximately seven and a half to eight years, his duties required that he observe vehicle inspections wherein mechanics used compressed air to blow out brake debris (dust) to allow for a visual inspection of the brakes.  Lokey testified that, during these years, he observed vehicle inspections in approximately 70 garages a month, for five to six hours a day, ten days each month.  Lokey testified to standing within ten feet of the inspectors who were blowing out brake linings with compressed air, and that these blow outs were a fairly common practice in inspections at the time.  He also recalled breathing in visible dust in the garages, which to his knowledge had no specialized ventilation systems.  He

2

testified that he was not provided protective clothing or masks or warned that breathing brake dust was harmful to his health.

Lokey testified that his rotations included supervising inspections at a Ford dealership and that he was sure he was present when this process was being done on Ford cars. Due to the time period in which he inspected cars, he testified that the vast majority of the cars being inspected at the garages he visited were American-made cars. He also specifically remembered Oldsmobile dealers on his rotation. He testified that the garages he visited in these locations and others did both inspection work and regular mechanical work in adjacent bays, the details of which he was not aware.

Lokey could not identify the type of brake linings being inspected. The Administrator of Lokey's estate presented circumstantial evidence as to the likely manufacturer of the brake linings at trial based on the testimony of a former assistant factory manager for Bendix in charge of "organic products" (including asbestos products). The witness testified that Bendix manufactured asbestos-containing friction products for brakes, including primary brake linings manufactured by Bendix that were approximately fifty percent asbestos material. He also testified that Bendix likely held one hundred percent of the market for Oldsmobile up to the late 1960s or early 1970s, until front disc brakes were phased in. He testified

3

that they also began providing materials for Fords in 1955 and had one hundred percent of the new Ford market share for the 15 years prior to 1983. He also stated that he believed they had one hundred percent of the replacement market for brake linings for Oldsmobiles and Fords in the late 1960s.

Dr. John C. Maddox and Dr. Laura Welch, experts for Lokey's estate, testified that chrysotile asbestos, the type of asbestos found in brakes, can cause mesothelioma. They opined that the exposure to dust from Bendix brakes and brakes in new Ford cars were both substantial contributing factors to Lokey's mesothelioma. Maddox and Welch opined that the current medical evidence suggests that there is no safe level of chrysotile asbestos exposure above background levels in the ambient air.

Lokey also testified that he worked as a pipefitter at the Norfolk Naval Shipyard for slightly over a year in the early 1940s. Lokey testified that his own work and the work of those immediately around him involved packing sand into pipes so that the pipes could be bent to fit the ships. He had no personal knowledge of any exposure to asbestos in the shipyard. Lokey admitted, however, that he worked in a large warehouse and was unaware of all the work done and products used in the warehouse, whether asbestos products were present, or whether there was any ventilation.

4

Dr. David H. Garabrant, expert for the defense, testified that people who work around asbestos-containing brakes are at no higher risk of developing mesothelioma than those who do not, but noted documented evidence of increased risk of mesothelioma for those who worked around shipyards, both directly with asbestos material and also in its vicinity. Dr. Victor Roggli, a pathologist presented by the defense, testified that he found amosite asbestos fibers in Lokey's lung tissue. Following his analysis of Lokey's lung fibers, he opined that Lokey's profile was more consistent with a person who had exposure to amosite asbestos at a shipyard sixty years ago than a person exposed to chrysotile brake products. Dr. Roggli admitted, however, that his investigation did not include the pleura of the lungs and that he opined that each and every exposure to asbestos above background level experienced by an individual is a substantial contributing factor in the development of mesothelioma.

The trial court instructed the jury on negligence and breach of warranty theories. The jury found in favor of the estate as to negligence and awarded damages in the amount of $282,685.69. The trial court denied Bendix' and Ford's motions to strike the expert testimony and their motions to set aside the verdict or for a new trial and entered final judgment for the estate. Bendix and Ford have timely appealed.

5

## II. Discussion

### A. Jury Instructions as to Causation

The circuit court instructed the jury on proximate cause but also on five occasions instructed the jury to determine whether Ford's or Bendix' negligence was a "substantial contributing factor" to Lokey's mesothelioma. Defendants challenge the use of the substantial contributing factor language as contrary to prevailing Virginia law as to causation. The determination of whether a jury instruction accurately states the relevant law is a question of law that we review de novo. Hawthorne v. VanMarter, 279 Va. 566, 586, 692 S.E.2d 226, 238 (2010).

The circuit court defined proximate cause in Jury Instruction 19 as follows:

> A proximate cause of an injury, accident, or damage is a cause which in the natural and continuous sequence produces the accident, injury, or damage. It is a cause without which the accident, injury or damage would not have occurred.

This is a plain-language adaptation of the long-accepted definition of proximate cause set forth by this Court in Wells v. Whitaker, 207 Va. 616, 622, 151 S.E.2d 422, 428 (1966): "The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces that event, and without which that event would not have occurred."

6

We said in Wells that the first element of proximate cause, causation in fact, is "often described as the 'but for' or sine qua non rule." [2]  Id.  We explained that "[t]o impose liability upon one person for damages incurred by another, it must be shown that the negligent conduct was a necessary physical antecedent of the damages."  Id.

The requirement of but-for causation came with a caveat, however:  "The 'but for' test is a useful rule of exclusion in all but one situation:  where two causes concur to bring about an event and either alone would have been sufficient to bring about an identical result."  Id. at 622 n.1, 151 S.E.2d at 428 n.1 (emphasis added).

In such a scenario, our law provides a means of holding a defendant liable if his or her negligence is one of multiple concurrent causes which proximately caused an injury, when any of the multiple causes would have each have been a sufficient cause.  Carolina, Clinchfield & Ohio Railway Co. v. Hill, 119 Va. 416, 421, 89 S.E. 902, 904 (1916) (" 'To show that other causes concurred in producing, or contributed to the result is

---

[2] We note that there are inconsistencies in the national legal nomenclature as to whether cause-in-fact is considered to be a subset of proximate cause or whether cause-in-fact, in addition to proximate cause (defined as additional legal restrictions as to liability), together create legal cause.  We opt for the former nomenclature as it is the more widely used terminology in Virginia as well as the terminology used by the circuit court in this case.

no defense to an action for negligence. . . .  Where the negligence of two or more persons acting independently, concurrently results in an injury to a third, the latter may maintain his action for the entire loss against any one or all of the negligent parties. . . .' ") (quoting 21 Am. & Eng. Enc. of Law 495-96).  This legal principle can be found today in the Virginia model jury instruction providing the definition of concurring negligence:  "If two or more persons are negligent, and if the negligence of each is the proximate cause of the plaintiff's injury, then each is liable to the plaintiff for his injury.  This is true even if the negligence of one is greater than the negligence of the other [or others]."  1 Virginia Model Jury Instructions – Civil, No. 4.020, at 4-13 (repl. ed. 2011).  The circuit court in this case gave almost an identical instruction in Jury Instruction Number 23.

Causation in a mesothelioma case, however, presents a challenge for the courts beyond even our standard concurring negligence instruction.  Mesothelioma is a signature disease: it was uncontroverted at trial that the cause of mesothelioma is exposure to asbestos at some point during an individual's lifetime.  The long latency period of the disease, however, makes it exceedingly difficult to pinpoint when the harmful asbestos exposure occurred and, in the presence of multiple exposures, equally difficult to distinguish the causative

exposure(s).  See Locke v. Johns-Manville Corp., 221 Va. 951, 957-58, 275 S.E.2d 900, 905 (1981) (discussing the latency period between the exposure to asbestos, the later onset of the "harm" in mesothelioma cases — the development of the cancer – and, finally, the development of noticeable mesothelioma symptoms); see also Symposium, A Tribute to Professor David Fischer:  The Insubstantiality of the "Substantial Factor" Test for Causation, 73 Mo.L.Rev. 399, 401-02 (2008).

Further complicating the issue, although numerous individuals were exposed to varying levels of asbestos during its widespread industrial use before safety measures became standard, not all persons exposed developed mesothelioma. 5 Richard M. Patterson, Lawyers' Medical Cyclopedia of Personal Injuries & Allied Specialties § 33.54, at 33-81 through 33-82 (6th ed. repl. ed. 2011).  It is not currently known why some are more susceptible than others to developing mesothelioma, or why even low levels of exposure may cause mesothelioma in some individuals while others exposed to higher dosages never develop the disease.  See id. at 33-82, 33-84.  Thus, in the context of a lifetime of potential asbestos exposures, designating particular exposures as causative presents courts with a unique challenge.

Despite this lack of certainty, we task juries with determining liability in multiple exposure mesothelioma cases.

Virginia statutory and case law makes clear that the Commonwealth permits recovery for parties injured by asbestos exposure, including those with mesothelioma, even when a jury must draw inferences from indirect facts to determine whether an exposure was causal.  See, e.g., Code § 8.01-249(4) (addressing the statute of limitations for latent mesothelioma cases); see also Owens-Corning Fiberglas Corp. v. Watson, 243 Va. 128, 143-44, 413 S.E.2d 630, 639 (1992) (upholding a mesothelioma verdict against the manufacturer of Kaylo, an asbestos-containing product, despite only indirect evidence that the injured party worked with Kaylo).  The question before us is whether the Commonwealth's approach to proximate cause should be modified to allow such recovery in multiple-causation cases and, if so, how.  Certainly, if the traditional but-for definition of proximate cause was invoked, the injured party would virtually never be able to recover for damages arising from mesothelioma in the context of multiple exposures, because injured parties would face the difficult if not impossible task of proving that any one single source of exposure, in light of other exposures, was the sole but-for cause of the disease.

The circuit court, in an admirable attempt to offer guidance to the jury as to this point, invoked a supplemental term in its jury instructions:  "substantial contributing factor."  For example, in Instruction 16, the court stated:

10

Before the plaintiff is entitled to recover from either defendant on the negligence theory, he must prove by a preponderance of the evidence each of the following elements against the defendant: Number 1, exposure to asbestos-containing products manufactured and/or sold by defendant was a <u>substantial contributing factor</u> in causing plaintiff's injury; Number 2, at the time of Mr. Lokey's exposure, defendants knew or had reason to know that its products could cause injury to persons when the product was being used in a reasonably foreseeable manner; Number 3, defendant failed to adequately warn of such a danger; and Number 4, defendants' failure to adequately warn of the danger was a <u>substantial contributing factor</u> in causing plaintiff's injury.

(Emphasis added.) Similar language was used as to the instruction on implied warranty theory in Instruction 14 and in the court's description of the availability of damages in Instruction 30 ("To recover damages, the plaintiff must show that Mr. Lokey was injured as a result of the defendant's [sic] negligence and/or their breach of certain implied warranties and that the conduct of either or both defendants was a <u>substantial contributing factor</u> in his disease."). (Emphasis added.)

In the last several decades, with the rise of asbestos-based lawsuits, the "substantial contributing factor" instruction has become prominent in some other jurisdictions. See, e.g., <u>Lohrmann v. Pittsburgh Corning Corp.</u>, 782 F.2d 1156, 1162-63 (4th Cir. 1986) (upholding Maryland's substantial contributing factor standard in an asbestosis case); <u>Rutherford v. Owens-Illinois, Inc.</u>, 941 P.2d 1203, 1219 (Cal. 1997)

11

(approving the substantial contributing factor test in California); Borg-Warner Corp. v. Flores, 232 S.W.3d 765, 773-74 (Tex. 2007) (permitting a substantial factor test in a Texas asbestosis case). "Substantial factor" language was also utilized in the Restatement (First) and Restatement (Second) of Torts. The phrase "substantial contributing factor" is not grounded, however, in the jurisprudence of this Court: we have not, in the history of our case law, ever invoked this language.

Considering it now for the first time, we find several problems with the substantial contributing factor instruction. As an initial matter, the circuit court in this case never defined the term "substantial contributing factor" in its jury instructions. It is not clear whether it was meant to alter the proximate cause requirement in some way, such as reducing the cause-in-fact requirement by referring to a "contributing" factor rather than an independent but-for cause. The term substantial contributing factor could be construed to mean any cause that is more than a merely de minimis factor. Conversely, the invocation of the term "substantial" could be interpreted to raise the standard for proof of causation beyond a mere preponderance of the evidence to some more elevated standard. In sum, some jurors might construe the term to lower the threshold of proof required for causation while others

12

might interpret it to mean the opposite.  We do not believe that substantial contributing factor has a single, common-sense meaning, and we conclude that a reasonable juror could be confused as to the quantum of evidence required to prove causation in the face of both a substantial contributing factor and a proximate cause instruction.

Our concerns are bolstered by the fact that variant definitions have arisen across those jurisdictions invoking substantial contributing factor language in their asbestos litigation.  Compare Lohrmann, 782 F.2d at 1163 (holding that Maryland's substantial contributing factor standard required a "frequency, regularity and proximity test" to protect asbestos defendants from being held liable on insufficient facts), with Rutherford, 941 P.2d at 1219 (defining substantial contributing factor in California to include exposures that increase the plaintiff's "risk" of developing cancer), and Flores, 232 S.W.3d at 773-74 (holding that defendant-specific evidence relating to dose was necessary to determine whether exposure from a defendant was a substantial factor in causing the disease in Texas).

Moreover, we agree with the explicit rejection of substantial contributing factor language in the recent Restatement (Third) of Torts:  Liability for Physical and Emotional Harm (2010).  The Restatement (Second) of Torts used

substantial factor language, stating that, absent an independent but-for cause, "[i]f two forces are actively operating . . . and each of itself is sufficient to bring about harm to another, [one] actor's negligence may be found to be a substantial factor in bringing it about." Restatement (Second) of Torts § 432 (1965).

The latest revision of the Restatement, however, deliberately abandoned this language, explaining:

> [T]he substantial-factor rubric tends to obscure, rather than to assist, explanation and clarification of the basis of [causation] decisions. The element that must be established, by whatever standard of proof, is the but-for or necessary-condition standard of this Section. Section 27 provides a rule for finding each of two acts that are elements of sufficient competing causal sets to be factual causes without employing the substantial-factor language of the prior Torts Restatements. There is no question of degree for either of these concepts.

Restatement (Third) of Torts § 26, cmt. j. The comment also specifically references the tendency of courts to at times interpret the language as either raising or lowering the factual causation standard, leading to inconsistent and inaccurate statements of law. Id. If courts cannot be relied upon to consistently construe the language, we cannot expect lay jurors to accomplish the same task.

The Restatement (Third) of Torts relies instead on the combination of sections 26 and 27:

14

§ 26 Factual Cause

Tortious conduct must be a factual cause of harm for liability to be imposed. Conduct is a factual cause of harm when the harm would not have occurred absent the conduct. Tortious conduct may also be a factual cause of harm under § 27.

§ 27 Multiple Sufficient Causes
If multiple acts occur, each of which under § 26 alone would have been a factual cause of the physical harm at the same time in the absence of the other act(s), each is regarded as a factual cause of the harm.

This model, as explicated in the comments, is quite consistent with our statements in Wells regarding concurring causation. The rationale articulated in comment c of § 27 echoes the logic behind our long history of recognizing concurring causes:

A defendant whose tortious act was fully capable of causing the plaintiff's harm should not escape liability merely because of the fortuity of another sufficient cause. . . . When two tortious multiple sufficient causes exist, to deny liability would make the plaintiff worse off due to multiple tortfeasors than would have been the case if only one of the tortfeasors had existed. Perhaps most significant is the recognition that, while the but-for standard provided in § 26 is a helpful method for identifying causes, it is not the exclusive means for determining a factual cause. Multiple sufficient causes are also factual causes because we recognize them as such in our common understanding of causation, even if the but-for standard does not. Thus, the standard for causation in this Section comports with deep-seated intuitions about causation and fairness in attributing responsibility.

Restatement (Third) of Torts § 27, cmt. c (emphasis added). The multiple sufficient cause analysis allows multiple tortfeasors to be found jointly and severally liable.

15

The Reporters Note to § 27, comment b, specifically observes that some jurisdictions use the term "concurrent causes" rather than multiple sufficient cause. Indeed, multiple-exposure mesothelioma cases fit quite squarely with our line of concurring cause cases, "where two causes concur to bring about an event and either alone would have been sufficient to bring about an identical result." Wells, 207 Va. at 622 n.1, 151 S.E.2d at 428 n.1 (emphasis added). See also Schools v. Walker, 187 Va. 619, 629-30, 47 S.E.2d 418, 423 (1948) ("It is not essential, therefore, for a plaintiff to show that an act, claimed to have been the proximate cause . . . was the only cause. . . . Where the concurring negligence of the two produces a single injury and each is its proximate cause they are both liable.") (internal quotation marks and citation omitted); Carolina, C. & O. Ry., 119 Va. at 420, 89 S.E. at 903 ("[W]here there are several concurrent negligence causes, the effects of which are not separable, though due to independent authors, either of which is sufficient to produce the entire loss, all are jointly or severally liable for the entire loss.").

Unfortunately, our model jury instruction for concurring negligence invokes only general language that each is a "proximate cause" of the harm, rather than more specifically articulating the standard indicated in Wells. The standard

16

that, in this case, exposure to the defendant's product alone must have been sufficient to have caused the harm is both an accurate articulation of our concurring cause law and perfectly plain to the average juror. This standard constitutes the cause-in-fact portion of the proximate cause requirement in concurring cause cases. The factfinder is left, having heard the nature of the exposures to each of the products at issue, as well as the medical testimony as to the requisite exposure necessary to cause mesothelioma, to determine whether the exposure attributable to each defendant was more likely than not sufficient to have caused the harm.

While it might be clearly seen in a car accident or converging fires that both acts contributed in some degree to the harm, the nature of mesothelioma leaves greater uncertainty as to which exposure or exposures in fact constituted the triggering event. This is, however, a distinction without a difference: if the jurors, after hearing the testimony and evidence, believe that a negligent exposure was more likely than not sufficient to have triggered the harm, then the defendant can be found liable in the same way that a jury can conclude that a driver in a multiple-car collision or the negligent party in one of two converging fires is liable.

Established Virginia law indicates that in order for acts of negligence to constitute concurring causes, it is not

17

necessary that concurring acts occur simultaneously. <u>Dickenson</u>

<u>v. Tabb</u>, 208 Va. 184, 193, 156 S.E.2d 795, 802 (1967).  This

appears at first glance to be contrary to the language in the

latest Restatement:

> § 27 Multiple Sufficient Causes
>
> If multiple acts occur, each of which under § 26
> alone would have been a factual cause of the physical
> harm <u>at the same time</u> in the absence of the other
> act(s), each is regarded as a factual cause of the
> harm.

Restatement (Third) of Torts § 27 (emphasis added).  We note,

however, that the phrase "at the same time" is placed so as to

modify "factual cause of the physical harm" rather than "acts

occur."  We thus read this to be consistent with our precedent.

The acts themselves do not have to be concurrent, so long as

they are "operating and sufficient to cause the harm

contemporaneously."  Restatement (Third) of Torts § 27, cmt. e.

We have held, as to mesothelioma, that the "harm" occurs not at

the time of exposure but at the time when competent medical

evidence indicates that the cancer first exists and causes

injury.  <u>Locke</u>, 221 Va. at 957-58, 275 S.E.2d at 905.[3]

Recognizing that this date, if possible to isolate, may be

decades after an injured party's exposure(s) to asbestos, <u>id.</u>,

---

[3] Although the General Assembly later established a
discovery rule for asbestos-related diseases based on
diagnosis, thus altering the statute of limitations, <u>see</u> Code
§ 8.01-249(4), this does not redefine the definition of harm or
injury for the Court.

it may often be the case that any exposure sufficient to cause harm that occurred prior to the development of the cancer may constitute one of multiple sufficient causes under the Restatement and a concurring cause in Virginia.

The exposure must have been "a" sufficient cause: if more than one party caused a sufficient exposure, each is responsible. Other sufficient causes, whether innocent or arising from negligence, do not provide a defense. Excluding other exposures from the pool of multiple sufficient causes will require competent medical testimony indicating whether the timing of exposure could possibly have caused the cancer. Defendants with sufficient exposures that occur after the cancer has already developed cannot be held liable.

It must be noted that there is a separate comment under § 27, entitled "Toxic substances and disease," that appears to offer an alternative approach to causation specific to disease. See Restatement (Third) of Torts § 27, cmt. g. This approach allows for a finding of causation when multiple exposures combine to reach the threshold necessary to cause a disease, allowing parties who were responsible for some portion of that threshold to be held liable. While it may be the case that this dose-related approach to causation is indeed appropriate for some cancers or diseases, we do not find it to be necessarily appropriate for mesothelioma, in light of the

19

current state of medical knowledge.  This comment assumes an identifiable threshold level of exposure triggering a disease. Given the current state of medical knowledge, we find the general approach described in comments a through e of section 27 to be more helpful in mesothelioma and more consistent with our case law.

Here, for the first time, we are called upon to rule explicitly as to the causation standard appropriate for mesothelioma.  We find that in concurring causation cases, the "sufficient"-to-have-caused standard as elaborated above is the proper way to define the cause-in-fact element of proximate cause.  We note that, while the Commonwealth currently only offers a model jury instruction as to concurrent negligence, concurring causes are not so limited:  use of the multiple-sufficient-causes approach remains appropriate whether the concurring causes are all tortious in nature or whether some are innocent.

While we reject defendants' strict interpretation of sole but-for cause argued to the circuit court at trial, we nonetheless conclude that the trial court erred in failing to sustain the defendants' objections to the substantial contributing factor jury instructions.  We remand for further proceedings consistent with the multiple sufficient cause analysis.

## B.  Alternative Causes

Ford alleges that the evidence presented was insufficient to establish that exposure to brake dust from Ford products proximately caused Lokey's mesothelioma when evidence demonstrated a more likely alternative cause (specifically, the earlier alleged exposure to amosite asbestos at the shipyard). Based on our holding above, the plaintiff must show that it is more likely than not that Lokey's alleged exposure to dust from Ford brakes occurred prior to the development of Lokey's cancer and was sufficient to cause his mesothelioma.  Given that this approach differs from that taken in the circuit court, we do not find it appropriate to rule on the sufficiency of the evidence at trial at this time.

## C.  Expert Testimony

In light of our above holding rejecting substantial contributing factor causation, we also decline to reach the assignments of error relating to expert testimony.

Bendix' assignment of error is worded as follows:

2. The trial court erred in permitting the Administrator's experts to opine that "any exposure" to asbestos above background levels was a substantial contributing factor in causing the decedent's mesothelioma because the ["]any exposure["] theory was scientifically unreliable and was not based on an adequate factual foundation concerning the decedent's exposure to Bendix brakes.

21

As we have held that substantial contributing factor causation is not a permissible standard for causation in the Commonwealth, the above assignment of error is no longer applicable. The circuit court now needs to consider the experts' opinions as to whether the exposures by Ford and Bendix were each more likely than not sufficient to have caused mesothelioma.

Ford's assignment of error is worded slightly differently:

4. The Circuit Court erred in holding that there was sufficient foundation for the admission of the causation testimony of Plaintiff's expert witnesses Drs. Maddox and Welsh and in denying Ford's motion to strike the testimony.

Despite the difference in language, Ford's assignment of error suffers from the same infirmity. Ford alleges that the factual foundation upon which the experts' causation opinions were based was insufficient. This causation testimony was inextricably linked to the substantial contributing factor test for causation. The experts must opine as to what level of exposure is sufficient to cause mesothelioma, and whether the levels of exposure at issue in this case were sufficient. The bases for the witnesses' opinions as to substantial contributing factor causation are now rendered moot.

## D. Failure to Warn and Proximate Cause

Both defendants allege that the plaintiff failed to present evidence sufficient to show that their failure to warn

22

was the proximate cause of Lokey's mesothelioma.  Specifically, they allege the absence of evidence sufficient to show that Lokey's behavior would have changed had the defendants offered sufficient warnings.  As a result, defendants argue that plaintiff lacks sufficient evidence to find Ford or Bendix liable.  As this issue is both independent of the multiple-sufficient-cause proximate cause analysis addressed in Part II.A, supra, and would be dispositive if defendants were correct, we will reach this assignment of error.

In his de bene esse deposition, Lokey was never asked if his behavior would have been changed had he known that he was inhaling a potentially fatal substance.  Lokey, deceased by the time of trial, was obviously unavailable for further questioning.  While Virginia does not observe a heeding presumption,[4] we have clearly already ruled on this issue, stating:

> [The injured party], of course, was unable, because of his disability, to tell the jury whether, had a warning been provided, he would have heeded it in the manner suggested by [the expert witness].  Nor could anyone have spoken for [the injured party].  But frequently material facts are not proven by direct evidence.  A verdict may be properly based upon reasonable inferences drawn from the facts.  If facts are present from which proper inferences may be drawn this is sufficient.  Here, from the circumstances

---

[4] A heeding presumption is "a rebuttable presumption that an injured product user would have followed a warning label had the product manufacturer provided one."  Black's Law Dictionary 1305 (9th ed. 2009).

that were proven below, and according to the ordinary experience of mankind, the jury was warranted in the conclusion that [the] injury would not have occurred had [a warning] been given.

Hoar v. Great E. Resort Mgmt., Inc., 256 Va. 374, 388, 506 S.E.2d 777, 786 (1998) (internal quotation marks and citations omitted) (final modification in original).

We find this case to be precisely on point. Reasonable jurors are entitled to utilize their own experiences, as well as evidence as to the character of the injured party and the known asbestos dangers at the time the warning should have been given, in order to draw conclusions as to the content of an adequate warning and whether Lokey would have heeded such a warning.

In this case, the plaintiff presented evidence through multiple expert witnesses of the dangers of asbestos exposure, as well as evidence that Ford and Bendix had internal corporate documents at the time Lokey was inspecting garages that indicated that asbestos exposure from brake linings had carcinogenic effects. Lokey's son-in-law testified that Lokey was a "perfectionist," a "by-the-book guy. Everything was to be done correctly." The jury was provided with ample evidence to allow it to conclude that a reasonable person who was concerned for his or her safety and who, like Lokey, was

24

inclined to follow recommended procedures and guidelines, would have heeded a warning had one been given.

Bendix and Ford emphasize the fact that boxes containing Bendix brakes were armed with warning labels during the final year of Lokey's employ as a garage inspector, and Lokey's behavior did not change. They argue that this evidence shows that, even had an adequate warning been issued in the earlier years of Lokey's inspection work, the warning would have been ignored by Lokey and therefore could not have been the proximate cause of the harm.

"At common law the liability of a manufacturer for failure to adequately warn of the dangers incident to the use of his product does not depend on whether the injury is to the person using the product . . . or to persons . . . other than those to which the product is to be applied." McClanahan v. California Spray-Chemical Corp., 194 Va. 842, 853-54, 75 S.E.2d 712, 719 (1953). Considering that his employment with the Commonwealth required him to be present at inspections which included the blowing out of brakes, and testimony that defendants were aware at the time that compressed air was used to blow out brake dust, the jury was entitled to conclude that Lokey's exposure to asbestos was foreseeable by Bendix and Ford and that a person in his position should have been warned.

We have previously stated that "an insufficient warning is in legal effect no warning." Id. at 852, 75 S.E.2d at 718 (internal quotation marks omitted). There was indeed evidence presented that the brake boxes eventually included a warning. There was no evidence presented, however, that Lokey knew of this warning or reasonably could have known of it: the warning was present only on new boxes of Bendix brakes, which inspectors or supervisors of inspections might reasonably have never seen. Indeed, Lokey himself testified that he was never warned. A reasonable jury could thus have found, based on this evidence, that the warning on the boxes was inadequate as to Lokey. If the warning on the boxes was inadequate, the jury would have correctly disregarded the fact that Lokey's behavior remained unchanged.

The jury was then left with evidence of the known dangers of asbestos and could reasonably infer that Lokey, if properly informed of these dangers at the time, would have taken precautionary measures. We therefore find no defect in the circuit court's conclusion that there was evidence sufficient for a jury to find that the failure to warn was the proximate cause of the injury.

III.  Conclusion

For the foregoing reasons, we reverse and remand for further proceedings.

Record No. 120283 – <u>Reversed and remanded.</u>
Record No. 120299 – <u>Reversed and remanded.</u>